IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| TIMOTHY T. AGEE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1575C |
| v. | ) | (Judge Wheeler) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, the United States, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), respectfully requests that the Court deny in part plaintiffs' motion for partial summary judgment and enter judgment in favor of the United States with respect to the following claims: (1) plaintiffs' claims for civil service retirement benefits; (2) plaintiffs' claim that the remote worksite allowance should have been included in their basic rate of pay; and (3) plaintiffs' claims for overtime pay for those occasions on which overtime was scheduled, but the plaintiffs did not work and were not charged annual leave or sick leave.

In support of this motion, we rely upon the amended complaint, the parties' joint stipulation of uncontested material fact filed on November 22, 2006, and the following brief.

STATEMENT OF FACTS

Pursuant to RCFC 56(h)(3), we rely upon the parties' joint stipulation of uncontested material fact (Exhibit A hereto) in lieu of submitting proposed findings of uncontroverted fact. Our response to plaintiff's proposed findings of uncontroverted fact is attached hereto as Exhibit B.

## ARGUMENT

### I. The Court Does Not Possess Jurisdiction To Entertain Plaintiffs' Claim For Retirement Benefits

The Court of Federal Claims does not possess jurisdiction to entertain claims for civil service retirement benefits. Congress has established a comprehensive scheme for retirement benefits claims, in which this Court has no role. In addition, those plaintiffs who are not yet retired have failed to state a claim for money presently due and owing within the jurisdiction of this Court.

#### A. Congress Has Conferred Exclusive Jurisdiction Over Retirement Benefit Claims Upon the Office of Personnel Management, The Merit Systems Protections Board, And The Court Of Appeals For The Federal Circuit

Individuals seeking civil service retirement benefits must first apply to the Office of Personnel Management ("OPM") for benefits. 5 U.S.C. § 8347(b). An adverse decision from the Office of Personnel Management may only be appealed to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 8347(d). Except for certain cases involving prohibited discrimination, not applicable here, judicial review of a decision by the Merit Systems Protection Board is only available in the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b). OPM, the MSPB, and the Federal Circuit are the arbiters of retirement benefit claims, and this Court possesses no jurisdiction to entertain such claims. See Rogers v. United States, 15 Cl. Ct. 692, 698 (1988) (discussing statutory framework).

In two decisions, the Supreme Court has held that the provisions governing administrative and judicial relief in Federal personnel matters as enacted by the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), as amended by the Federal

Courts Improvements Act, Pub. L. No. 97-164, 96 Stat. 25 (1982), were intended to be the exclusive jurisdictional basis for relief in such claims. See Lindahl v. Office of Personnel Management, 470 U.S. 768 (1985); United States v. Fausto, 484 U.S. 439 (1988).

Lindahl, like the present case, involved a civil service retirement claim. Fausto involved a Federal employee discharge claim. In each decision, the Supreme Court held that the CSRA established a comprehensive overhaul of the civil service system, providing new avenues of administrative review through the MSPB, and judicial review by direct appeal to the Federal Circuit. These provisions of the CSRA were intended to supersede those jurisdictional statutes pursuant to which the district courts and the former Court of Claims had exercised judicial review in civil service retirement or other Federal personnel actions, such as the Tucker Act provisions, 28 U.S.C. §§ 1346(a)(2), 1491; the Administrative Procedures Act, 5 U.S.C. § 703; and provisions relating to mandamus, injunctive, and declaratory relief. See Lindahl, 470 U.S. at 773-74, 791-800; Fausto, 484 U.S. at 443-45. Plaintiffs' claims concerning civil service retirement benefits must be presented to OPM. Plaintiffs would be able to appeal OPM's determination to the MSPB, after which judicial review would be available in the Court of Appeals for the Federal Circuit.

The Court recently held in Ferreiro v. United States, 72 Fed. Cl. 1 (2006), that the Court lacks jurisdiction to entertain a claim for retirement benefits. In Ferreiro, the plaintiffs claimed benefits pursuant to the Civil Service Retirement System ("CSRS"). Id. at 3. The Court, citing Lindahl and Fausto, held that it did not possess jurisdiction and granted the Government's motion for summary judgment. Id. at 4, 6.

Although Ferreiro involved a claim for CSRS benefits, the Court should apply the same

analysis here to those plaintiffs who are seeking retirement benefits pursuant to the Federal Employees Retirement System ("FERS"). As with CSRS, Congress has given OPM the authority to administer FERS and adjudicate all claims thereunder. 5 U.S.C. § 8461(b) and (c). As with CSRS, OPM's benefit decisions are appealable to the MSPB, whose decisions are reviewable by the Federal Circuit. 5 U.S.C. § 8461(e)(1); 5 U.S.C. § 7703; 28 U.S.C. § 1295(a)(9).

Ferreiro is consistent with the United States Court of Appeals for the District of Columbia Circuit's decision in Fornaro v. James, 416 F.3d 63 (D.C. Cir. 2005). In an opinion issued shortly before he became Chief Justice of the United States, Circuit Judge Roberts rejected a proposed class action by retired, disabled firefighters seeking district court review of their Federal disability benefits pursuant to the Administrative Procedures Act. Specifically, the proposed class sought mandamus and declaratory relief to force OPM to provide notice to the proposed class members and to grant the proposed class members enhanced benefits. Id. at 65.

The Court of Appeals for the D.C. Circuit emphasized the fact that the CSRA is an exclusive remedy, noting that "so far as review of determinations under the CSRA is concerned, what you get under the CSRA is what you get." Id. The court stated that "[a]llowing district court actions challenging how OPM calculates civil service benefits for particular classes or beneficiaries would plainly undermine the whole point of channeling review of benefits determinations to the MSPB and from there to the Federal Circuit." Id. at 68. Moreover, the court rejected the plaintiffs' request for mandamus noting that, "however unsatisfactory the CSRA's approach may appear to the plaintiffs, the fact that a remedial scheme chosen by Congress vindicates rights less efficiently than a collective action does not render the CSRA

remedies inadequate for purposes of mandamus." Id. at 69, citing Council of & for the Blind of Delaware County Valley, Inc. v. Regan, 709 F.2d 1521, 1532 (D.C. Cir. 1983).

B. The Plaintiffs Who Have Not Yet Retired Have Failed To State A Claim For Money Presently Due And Owing

The plaintiffs who are not yet retired may not recover anything in connection with their retirement benefits. Their claims for future retirement benefits do not state a claim for money that is presently due and owing. The Court does not possess jurisdiction to entertain these claims, or, in the alternative, plaintiffs have failed to state a claim upon which relief may be granted.

In this Court, consent to suit is based upon the Tucker Act, 28 U.S.C. § 1491. Testan v. United States, 424 U.S. 393, 397 (1976). Pursuant to this statute, an action may be maintained in the United States Court of Federal Claims only if it is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act creates no substantive right of recovery against the United States; the Act confers jurisdiction upon the United States Court of Federal Claims only when there is an existing substantive right to money currently due and owing. Testan, 424 U.S. at 398; United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc).

Plaintiffs' claims for future retirement benefits do not state a claim for money currently due and owing. Therefore, the Court lacks jurisdiction to entertain these claims, or in the alternative, plaintiffs have failed to state a claim upon which relief can be granted. Wood v.

United States, 214 Ct. Cl. 744, 745 (1977) ("Since plaintiff is not yet 50, this court plainly has no jurisdiction at all to grant him any retirement benefits at this time."); Comonwealth of Kentucky ex rel. Cabinet for Human Res. v. United States, 16 Cl. Ct. 755, 760 (1989) ("The jurisdiction of the Claims Court to entertain an action is dependent upon a claim for money presently due.").

Portions of Count 4 and Count 5 of the amended complaint seek money damages and/or equitable relief with respect to plaintiffs' retirement benefits. Plaintiffs address retirement benefits at pp. 14-18 of their summary judgment brief. For the reasons stated above, the Court should enter judgment in favor of the United States with respect to plaintiffs' claims concerning retirement benefits.

## II. The Government Properly Excluded The Remote Worksite Allowance From The Calculation Of The Rate Of Basic Pay

The Government was required by the remote worksite allowance statute and regulations to exclude the allowance from the calculation of plaintiffs' basic rate of basic pay. The remote worksite allowance (which plaintiffs refer to as the "offshore allowance") is authorized by 5 U.S.C. § 5942, which provides in relevant part:

> [A]n employee of an Executive department or an independent establishment who is assigned to duty, except temporary duty, at a site so remote from the nearest established communities or suitable places of residence as to require an appreciable degree of expense, hardship, and inconvenience, beyond that normally encountered in metropolitan commuting, on the part of the employee in commuting to and from his residence and such worksite, is entitled, <u>in addition to pay otherwise due him</u>, to an allowance of <u>not to exceed $10 a day. The allowance shall be paid under regulations prescribed by the President</u> establishing the rates at which the allowance will be paid and defining and designating those sites, areas, and groups of positions to which the rates apply.

(Emphasis added.)

The regulations promulgated pursuant to 5 U.S.C. § 5942 are codified at 5 C.F.R. §§ 591.301-.310. The relevant regulation, 5 C.F.R. § 591.308, provides: "An allowance authorized under this subpart is in addition to any additional pay or allowances payable under other statutes. It shall not be considered part of the employee's rate of basic pay in computing additional pay or allowances payable under other statutes."

Plaintiffs' claim that the remote site allowance should be included in their rate of basic pay for purposes of calculating overtime pay is contrary to 5 U.S.C. § 5942, because the statute provides that the remote site allowance shall be paid "in addition to pay otherwise due" to the employee, whereas the plaintiffs characterize it as part of the basic pay due to them. Moreover, the statute places a firm cap "not to exceed $10 a day" upon the remote worksite allowance, which plaintiffs are attempting to circumvent by seeking time-and-a-half pay based upon the allowance.

The regulation is even more specific: the remote site allowance "shall not be considered part of the employee's rate of basic pay in computing additional pay or allowances payable under other statutes." 5 C.F.R. § 591.308. This regulation directly prohibits the agency from including the remote worksite allowance in the plaintiffs' basic rate of pay, which is what plaintiffs are seeking here.

Plaintiffs rely upon the language in 29 U.S.C. § 207(e), which requires that "all remuneration" be included in the basic rate of pay. Pl. Br. at 19. That requirement, however, is subject to numerous exceptions, one of which excepts "reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee

which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). The remote worksite allowance is compensation for travel and related expenses incurred in connection with working at a remote location, and is based upon a daily rate and not upon the hours of employment. Therefore, the remote worksite allowance falls within the § 207(e)(2) exception.

In addition, even if the Court were to find that the remote worksite allowance is not a "payment for traveling expenses" or a similar payment within the meaning of § 207(e)(2), the general language of 29 U.S.C. § 207(e) must nonetheless yield to the more specific language of the remote worksite allowance statute and regulation, 5 U.S.C. § 5942 and 5 C.F.R. § 591.308. It is a familiar rule of statutory construction that more specific provisions control over more general ones. For example, in Riggins v. Office of State Fair Employment Practices, 61 F.3d 1563, 1566 (Fed. Cir. 1995) the Federal Circuit reconciled an apparent conflict between the Government Employee Rights Act ("GERA") and the Capitol Police Requirement Act ("CPRA") by construing the more specific CPRA as creating a narrow exception to the general rule set forth in GERA. In this case, the remote site allowance statute and regulations are more specific than the general language of FLSA, and are therefore controlling.

Count 2 of the amended complaint alleges that the Government did not pay plaintiffs all of the overtime pay that was due to them. Plaintiffs' summary judgment brief explains at pp. 19-21 that this claim is based in part upon an alleged right to have the remote worksite allowance included in their basic rate of pay. For the reasons stated above, the Court should enter judgment in favor of the United States with respect to plaintiffs' claim that the remote worksite allowance should have been included in their basic rate of pay.

## III. Plaintiffs Are Not Entitled To Any Compensation For Those Days That They Did Not Work And For Which No Leave Was Deducted

This Court has held that if an employee does not work a scheduled overtime period, and no leave is deducted from his annual leave or sick leave account, then the employee is not entitled to compensation for that period. The parties have stipulated that between March 15, 1998, and December 2003, if a firefighter did not work the seventh day of the seven-day, 168-hour tour of duty, the Government did not charge the firefighter annual or sick leave. Joint Stipulation, ¶ 19. Therefore, plaintiffs are not entitled to any compensation for those occasions.

The rule that no compensation is due to employees for a non-worked overtime period for which no leave is deducted was established in Armitage v. United States, 13 Cl. Ct. 48 (1991). The plaintiffs in that case were law enforcement officers who were regularly scheduled to work overtime hours. Id. at 485-86. However, if the plaintiffs chose not to work the overtime hours, they were not required to take annual leave or sick leave. Id. Like the plaintiffs in this case, the plaintiffs in Armitage sought compensation at the overtime rate for these regularly scheduled overtime shifts that they did not work.

In Armitage, the Court considered and rejected the precise argument that plaintiffs are making here: that they are entitled to overtime compensation for non-worked overtime shifts because "the Government has misapplied the annual and sick leave statutes by failing both to credit their leave accounts based on hours of overtime regularly worked and to debit their accounts for hours of unworked overtime while on authorized absence. . . . Plaintiffs are in effect asking this court to declare that the plaintiffs were in annual leave or sick leave status, when they were not. " Id. at 489. The Court proceeded to analyze the agency's overtime and

leave accounting practices, and determined that they did not violate the leave statutes. Id. at 492. The Court concluded that because the plaintiffs were not on leave when they opted not to work an overtime shift, they were not entitled to leave with pay, overtime pay pursuant to Title 5, or overtime pay pursuant to the Fair Labor Standards Act. Id. at 492.

The Court followed and expanded Armitage in Abbott v. United States, 41 Fed. Cl. 553 (1998). Whereas Armitage was based in part on a detailed analysis of agency and OPM regulations, Abbott broadly endorsed the Armitage rationale. 41 Fed. Cl. at 556. In Abbott, the plaintiffs were Secret Service officers who sought overtime pay for scheduled shifts that they did not work, even though no leave was deducted on those occasions. The Court followed Armitage and held that the plaintiffs were not entitled to overtime pay because they were not assessed leave when they did not work overtime hours. Id.

The rule in Armitage and Abbott is consistent with common sense: if the plaintiffs were not charged leave for shifts that they did not work, then they should not receive overtime pay as if they had taken leave. The rule also is also consistent with efficiency and fairness. It would be cumbersome to adjust plaintiffs' work histories by converting the non-worked shifts from authorized absences to leave-with-pay shifts, then deducting from plaintiffs' leave accounts 24 hours of leave for each scheduled day that a plaintiff did not work. With respect to the plaintiffs who no are no longer Government employees, it obviously is not possible to deduct leave from their accounts.

Counts 1 through 4 of the amended complaint include allegations that arguably relate to a claim for pay and benefits for scheduled shifts that were not worked and for which no leave was deducted. Plaintiffs' summary judgment brief addresses this claim at pp. 18-19. For the reasons

stated above, the Court should enter judgment in favor of the United States with respect to plaintiffs' claim for pay and benefits for scheduled shifts that were not worked and for which no leave was deducted.

## IV. Uncontested Portions Of Plaintiffs' Motion For Partial Summary Judgment

The Government does not contest plaintiffs' motion for partial summary judgment with respect to: (1) plaintiffs' claim for an offshore allowance for days actually worked (Pl. Br. at 6-7); (2) plaintiffs' claim that the Government should have used a 168-hour schedule for purposes of computing basic pay (Pl. Br. at 8-10); and (3) plaintiffs' claim for leave adjustments (Pl. Br. at 11-13), excepting adjustments for shifts not actually worked for which no leave was deducted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Todd M. Hughes
TODD M. HUGHES
Assistant Director

s/ Roger A. Hipp
ROGER A. HIPP
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tel: (202) 305-3091
Fax: (202) 307-0972

December 4, 2006 Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on December 4, 2006, a copy of the foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Roger A. Hipp