**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AGEE, TIMOTHY T., et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO: 04-1575C |
| | ) | Judge Wheeler |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**POST-TRIAL MEMORANDUM OF LAW**
**REGARDING LIABILITY AND DAMAGES**

David Ricksecker
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Attorney of Record

Thomas A. Woodley
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Of Counsel

# TABLE OF CONTENTS


I. Introduction ....................................................................................1

II. Statement of Concise Facts ..............................................................2

III. Liability and Damages Argument ....................................................3

A. The Plaintiffs Are Owed Damages Under the Back Pay Act ..........................................................................3

1. The Plaintiffs are Owed $29,806.44 In Back Pay For the Government's Failure to Properly Pay Plaintiffs' Offshore Allowance..............................................4

2. The Government Failed to Properly Compensate Plaintiff Fire Fighters for the Seventh Day of the Fire Fighter's Regular Tour of Duty .....................................4

3. The Government Failed to Properly Calculate the Plaintiffs' Basic Pay.........................................7

a. The Plaintiff are Owed 7,948.11 Annual Leave Hours and 4,023.77 Sick Leave Hours for the Government's Failure to Properly Calculate Leave..............................................................8

i. Annual Leave ...............................................................9

ii. Sick Leave ...................................................................11

b. The Plaintiffs Who Are FERS Employees are Owed $23,483.48 for the Government's Failure to Properly Contribute to the Plaintiffs' Thrift Savings Plan. CSRS Plaintiffs Are Entitled to Recalculation of Their High Three If Those Years Fall Between 1998 and 2003 ............12

i. FERS ..........................................................................12

ii. CSRS Employees .......................................................14

iii. The Plaintiffs' Basic Pay Claims Addressing the Calculation of Retirement Benefits and Thrift Savings Plan Contribution ....................................................16

c. The Plaintiffs are Owed $1,575.06 in Back Pay for the Government's Failure to Properly Contribute to Plaintiffs' FEGLI ..................................................17

d. The Plaintiffs are Owed $159,697.52 in Interest Under the Back Pay Act for the Government's Failure to Properly Calculate the Basic Pay and Failure to Compensate for All Days of the 168 Hour Tour of Duty............18

B. The Plaintiffs are Owed Back Pay Damages Under the FLSA for the Government's Failure to Properly Include the Offshore Allowance in the FLSA Regular Rate for Overtime..........................................................................................18

1. The Government Failed To Properly Calculate The Plaintiff Fire Fighters' FLSA Regular Rate For Overtime.........................................................................................19

2. An Award of Liquidated Damages Equal to the Plaintiffs' Backpay Under the FLSA Is Clearly Warranted to Adequately Compensate Them.....................................24

a. General Legal Principles .............................................................24

b. The Government Cannot Establish That Its Violation of the FLSA Was in Good Faith or Was Objectively Reasonable.................................................................26

3. The Plaintiffs are Entitled to a Three Years Rather than Two Year Statute of Limitations .........................................................28

C. Attorney' Fees and Costs.....................................................................31

IV. Conclusion .............................................................................................33

# TABLE OF AUTHORITIES

## FEDERAL CASES

Armitage v. US, 13 CL Ct. 48 (1991) .......... 5

Beebe v. United States, 640 F.2d 1283 (Ct. C. 1981) .......... 33

Benjamin v. United Merchants and Manufacturers, Inc., 873 F.2d 41 (2nd Cir. 1989) .......... 32

Bibb Manufacturing Co. v. Walling, 164 F.2d 179 (5th Cir. 1947) .......... 25

Brock v. Willamowsky, 833 F.2d 11 (11th Cir. 1989) .......... 31, 32

Brooklyn Savings Bank v. O'Neil, 324 U.S. 697 .......... 26

Castilla v. Givens, 704 F.2d 181 (5th Cir. 1983) .......... 27, 28

Crenshaw v. Quarles Drilling Co., 798 F.2d 1345 (10th Cir. 1986) .......... 27

Dole v. Solid Waste Services, Inc., 733 F.Supp. 895 (E.D.Pa. 1990) .......... 32

EEOC v. State of Delaware, DHSS, 865 F.2d 1408 (3rd Cir. 1989) .......... 32

EEOC v. White and Son Enterprises, 881 F.2d 1006 (11th Cir. 1989) .......... 32

Featsent v. City of Youngstown, 70 F.3d 900 (6th Cir. 1995) .......... 24

Frank v. McQuigg, 950 F.2d 590 (9th Cir. 1991) .......... 24

Furr v. AT&T Technologies, Inc., 824 F.2d 1537 (10th Cir. 1987) .......... 30

Glen V. General Motors Corp., 658 F.Supp. 918 (N.D. Ala. 1986) .......... 32

Hazen Paper Co. v. Walter Biggins, 507 U.S. 604, 113 S.Ct. 1701 (1993) .......... 30

Herman v. Anderson Floor Co, 11 F.Supp.2d 1038 (E.D. Wis 1998) .......... 20

IAFF Local 359 v. City of Gary,
1995 U.S.Dist. LEXIS 21729 (N.D. Ind. 1995)........................................................24

IFPTE Local 529 and Army Corps of Engineers,
57 F.L.R.A. No. 174 (2002)..........................................................................................33

Kinney v. District of Columbia, 994 F.2d 6 (D.C. Cir. 1993)...........................................26

Landaas v. Canister Co., 188 F.2d 768 (3rd Cir. 1951) .....................................................25

Lanehart v. Horner, 818 F.2d 1574 (Fed. Cir. 1987) ........................................................6

Madison v. Resources For Human Development, Inc.,
233 F.3d 175 (3rd. Cir. 2000).........................................................................................20

Marshall v. Brunner, 668 F.2d 748 (3rd Cir. 1982) .........................................................25, 27

Martin v. Cooper Electric, 940 F.2d 896 (3rd. Cir. 1991)..................................................26, 29

Mayhew, Inc. v. Wirtz, 413 F.2d 658 (4th Cir. 1969) .......................................................29

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988) .................................................30

Michigan Association of Government Employees v. Michigan Department of
Corrections, 992 F.2d 82 (6th Cir. 1993) .......................................................................20

O'Brien v. Town of Agawam, 350 F.3d 279 (1st Cir. 2003)..............................................24

Overnight Motor Transport Co. v. Missell, 316 U.S. 572 (1942) .....................................26

Reich v. SNET, 121 F.3d 58 (2nd Cir. 1997) ....................................................................27

Renfro v. City of Emporia, 948 F.2d 1529 (10th Cir. 1991)..............................................26

Richards v. Marriott Corp., 549 F.2d 303 (4th Cir. 1977) ................................................26, 27

Roofers Local 307 v. G & M Roofing, 732 F.2d 495 (6th Cir.1984)................................33

Shelton v. Ervin, 830 F.2d 182 (11th Cir. 1988) ...............................................................33

Spires v. Ben Hill County, 980 F.2d 683 (11th Cir.1993) .................................................26, 29

TWA, Inc. v. Thurston, 469 U.S. 111 (1985)....................................................................30

Theisen v. City of Maple Grove,
41 F.Supp.2d 932 (D. Min..1999) ........ 24

Walton v. United Consumers Club, Inc., 786 F.2d 303 (7th Cir. 1986) ........ 26

**FEDERAL REGULATIONS**

5 C.F.R. §550.1301 ........ 9, 18

5 C.F.R. §550.1302 ........ 9, 21

5 C.F.R. §550.1305 ........ 2, 9,

5 C.F.R. §550.1306 ........ 12

5 C.F.R. §550.803 ........ 10, 15, 17

5 C.F.R. §551.514 ........ 23

5 C.F.R. §591.308 ........ 22

5 C.F.R. §630.2 ........ 10, 11, 12, 13

29 C.F.R. §553.230 ........ 21

29 C.F.R. §790.22(a) ........ 26

**FEDERAL STATUTES**

5 U.S.C. §5541 ........ 21

5 U.S.C. §5545b ........ 2, 3, 9, 18, 21,

5 U.S.C. §5551 ........ 10

5 U.S.C. §5596 ........ 4, 19, 33, 35

5 U.S.C. §5942 ........ 5, 21, 23

5 U.S.C. §6303 ........ 2

5 U.S.C. § 6304 ........ 10

5 U.S.C. §8431 ........ 13

5 U.S.C. §8432........................................................................................................ 2

5 U.S.C. §§ 8701-8716............................................................................................ 2, 18

29 U.S.C. §207 ...................................................................................................... 3, 20,

29 U.S.C. §216 ...................................................................................................... 25, 29,

29 U.S.C. §255........................................................................................................ 29

**POST-TRIAL MEMORANDUM OF LAW REGARDING LIABILITY AND DAMAGES**

## I. INTRODUCTION

Plaintiffs Timothy T. Agee, *et al.*, respectfully submit this memorandum in of law regarding liability and damages. The plaintiff fire fighters bring this action because the defendant has failed to pay and disburse to them their proper offshore allowance, Title 5 overtime compensation, FLSA overtime, annual leave, sick leave, retirement benefits, thrift savings plan contributions, and FEGLI contributions.

The record of undisputed facts, as supported by the in court testimony and plaintiffs' exhibits; and the applicable law discussed *herein*, establish: (1) the defendant has failed to properly compensate the fire fighters' their offshore allowance under 5 U.S.C. §§5942, 5596; (2) the defendant has failed to properly calculated, disburse, and compensate the fire fighters' annual leave and sick leave pursuant to 5 U.S.C. §6303, 6307; (3) the defendant has failed to properly calculate, disburse, and contribute the fire fighters' retirement benefits under 5 C.F.R. §550.1305; and (4) the defendant has failed to properly calculate, disburse, and contribute to the fire fighters' thrift savings plan under 5 U.S.C. §§8432 and 8432a; (5) the defendant has failed to properly calculate, disburse, and contribute to the fire fighters' Federal Employees Group Life Insurance (FEGLI) under 5 U.S.C. §§ 8701-8716; (6) the defendant has failed to properly compensate the fire fighters under 5 U.S.C. § 5545b; and (7) the defendant has failed to pay the fire fighters

overtime compensation at one and one-half times their regular rate of pay for all overtime hours worked as required by 29 U.S.C. §207(a) and (k), and 5 U.S.C. 5545b.

## II. STATEMENT OF CONCISE FACTS

See Parties Joint Statement of Facts (attached Exhibit A). In addition:

(1) The Government has been aware of failure to properly compensate fire fighters using the 168 hour tour of duty since 1998. See Plaintiffs exhibit No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 25; see also Hearing Transcript, Rumble, pp. 214-215 (stating that he first became aware of this situation in 1998 or 1999). Due to bureaucratic inertia, delay and inaction, the Government failed to take action on this matter until December, 2003.

(2) Prior to 2004, the Government never reviewed, researched or otherwise analyzed whether the offshore allowance should be included in the regular rate when calculating FLSA overtime. See Hearing Transcipt, Rumble, pp. 212 "I would not have considered the issue of the . . . offshore allowance to be an issue because it was specifically not addressed by the regulations."; Hearing Transcript, Greely, pp. 189-90, stating that it "probably wasn't even brought up" in 1998 when reviewing pay policy related to the enactment of the Fire Fighter pay Reform Act.

(3) After the lawsuit was filed, the Government performed a minimal, cursory review regarding whether or not the offshore allowance should be

included in the regular rate for FLSA overtime. See Hearing Transcript, Greely, pp. 189-90 (Ms. Greely stating that after the lawsuit was filed, she and Mr. Rumble only reviewed the CFR to determine whether the offshore allowance should be included in the regular rate).

## III. LIABILITY AND DAMAGES ARGUMENT

For an overview of the Government's liability, please refer to the Plaintiffs' Motion for Summary Judgment. (Attached as Exhibit B).

### A. The Plaintiffs are Owed Damages Under the Back Pay Act

The Back Pay Act does not, itself, provide a statutory basis for invoking the Court of Federal Claims' jurisdiction. The Back Pay Act is basically derivative in its application. Some provision of law other than the Back Pay Act must first mandate, or at least be interpreted to mandate, money damages to an employee suffering an unjustified or unwarranted personnel action before the Back Pay Act may be relied on to invoke the court's jurisdiction. The statute of limitations under the Back Pay Act goes back six years from the date the complaint was filed. See 5 USC § 5596. The plaintiffs Back Pay Act damage calculations go back six years from the date the lawsuit was filed, *i.e.*, October, 1998.

**1. The Plaintiffs are Owed $29,806.44 in Back Pay For the Government's Failure to Properly Pay Plaintiffs' Offshore Allowance**

Here, the parties agree that the Government classified SCI as a remote work location. Since SCI is designated a remote worksite, the plaintiffs are entitled to an allowance not to exceed $10 a day for every day worked. 5 USC § 5942. The Government admits that it only compensated the SCI fire fighters for 6 days of offshore allowance until December, 2003. Thus, under the Back Pay Act and 5 USC § 5942, the Government owes the plaintiffs offshore allowance pay for all days seven days worked. Because the Government only paid the SCI fire fighters offshore allowance for 6 days, rather then seven days, the plaintiffs are entitled to $29,806.44. See Hearing Transcript, Nickerson, pp.116-118 and Plaintiffs' Exhibits No. 40.

**2. The Government Failed To Properly Compensate Plaintiff Fire Fighters for the Seventh Day Of The Fire Fighters' Regular Tour of Duty**

Although the Government now compensates fire fighters for all 7 days of the fire fighters' 168 hour tour of duty, the government did not do so for five and one half years. The Government amazingly argues that it was not required to compensate fire fighters for all 168 hours of their tour of duty. The Government relies almost exclusively on the case Armitage v. US, 13 CL Ct. 48 (1991). There are substantial differences between the Armitage plaintiffs and the fire fighters at San Clemente Island (SCI).

In the Armitage case, the law enforcement plaintiffs did not accrue annual leave or sick leave for regularly scheduled overtime hours worked. Thus, the Court found that the plaintiffs were not entitled to overtime compensation for overtime hours scheduled, but not actually worked. ***This is very different then the SCI fire fighters***. The fire fighters' on San Clemente Island indeed do, and should have at all times, accrued leave for their entire regular tour of duty, including overtime hours. The Government essentially admits that it incorrectly disbursed leave to the plaintiffs based on 144 hour tour of duty, instead of the proper 168 hour tour of duty. Both 168 hours and 144 hours schedules are considered uncommon tours of duty. Since the SCI fire fighters accrue leave based on their uncommon tour of duty, including straight time overtime hours under the Fire Fighter Pay Reform Act, Armitage is inapplicable.

The fire fighters plaintiffs are akin to the plaintiffs in Lanehart v. Horner, 818 F.2d 1574 (Fed. Cir. 1987). The SCI fire fighters, similar to the fire fighters in Laneheart earned and used leave at an accelerated rate because of the uncommon tour of duty adopted by the fire fighters. Moreover, the fire fighters in Lanehart were required to take leave for any hours worked in their uncommon tour of duty. In Lanehart, the Court found that firefighters were entitled to pay for regularly scheduled overtime under the leave and pay statutes.

On the other hand, the Armitage plaintiffs ***did not*** accrue leave when they worked regularly scheduled overtime. In fact, the Armitage plaintiffs were arguing that the Government had misapplied the annual and sick leave statutes. In Armitage, the Government had not adopted the method of accruing and using leave on the basis of an uncommon tour of duty—and thus the Court rejected the plaintiffs' clam.

That is a very different than the situation faced by the SCI fire fighters. Here the Navy had paid the fire fighters according to the Firefighter Pay Reform Act, and calculated leave based on the uncommon tour of duty. The government, however, was calculating leave on the incorrect 144 hour tour of duty, rather than the proper 168 hour tour of duty. That, to a large extent, is what this case is all about. Since the fire fighters' regular tour of duty consists of 7, 24-hour shifts every 14 days, as the Government admits, the fire fighters' leave should have accrued on this basis as well.

Thus, the SCI fire fighters differ significantly from the Armitage plaintiffs. The Armitage plaintiffs were not earning leave on the basis of an uncommon tour of duty. Indeed, in Armitage, the plaintiffs were arguing that they ***should have accrued leave based on the uncommon tour of duty*****,** but the Court found that nothing requires an Agency to adopt that methodology of accruing leave based on their uncommon tour of duty. At SCI, however, the plaintiffs ***were*** earning leave on an uncommon tour of

duty, but the Navy was using the incorrect tour of duty, preventing the plaintiffs from properly accruing leave, as well as shorting the fire fighters' regular pay for the entire tour of duty if he was on leave.

Perhaps most telling is that the employer is now properly compensating the fire fighters for all 168 hours of their tour of duty—even if leave is taken, or a day is otherwise not worked. For the Government to comply with this requirement now, but argue that it was under no obligation to do so previously, is the height of hypocrisy. This violation amounts to $210,265.68, not including Back Pay Act interest. See Hearing Transcript, Nickerson, pp. 114-116; Plaintiffs' Exhibit No. 40.

### 3. THE GOVERNMENT FAILED TO PROPERLY CALCULATE THE PLAINTIFFS' BASIC PAY

Basic pay is the sum of pay for non-overtime hours that are part of a fire fighter's regular tour of duty and the straight time portion of overtime pay for hours in a fire fighter's regular tour of duty only for retirement benefits, leave and certain other benefits. The following methodology applies to fire fighters who usually work 24 hour shifts and have a regularly established workweek of at least 53 hours (on average if workweek varies):

(1) Derive basic fire fighter hourly rate by dividing the GS annual rate (including locality pay) by 2756 hours;

(2) Multiply the basic fire fighter rate times the number of non-overtime hours in the applicable period (e.g. maximum 106 hours in a biweekly pay period);

(3) The straight time portion of overtime for hours in a regular tour of duty is derived by multiplying the applicable fire fighter hourly rate of basic pay by the number of overtime hours in the regular tour of duty;

(4) Multiply the basic firefighter rate by the number of hours in the regularly established workweek to determine the amount of pay that is creditable for retirement, TSP basic pay, life insurance, severance pay, etc.

See OPM Sample Pay Calculation, Plaintiffs' Exhibit 34; see also 5 CFR §550.1301, *et seq*.

The Government changed the fire fighters' work schedule from a 144 hour work period to a 168 hour work period on March 15, 1998, thus establishing a new regular tour of duty. See 5 C.F.R. §550.1302. The Government, however, failed to properly calculate the fire fighter's basic pay until December 2003. The Government's failure to properly calculate the basic pay is absolutely contrary to the provisions found in 5 CFR §550.1305 and the Firefighter Pay Reform Act. See 5 U.S.C. §5545b. Indeed, the Government's implementation of a "regular tour of duty" policy appears to be no more than a combination of bureaucratic inertia and an attempt to avoid disbursement and payment of leave, retirement benefits and other benefits to which the fire fighters are entitled and the Government began paying correctly after December, 2003.

**a. The Plaintiffs are Owed 7,948.11 Annual Leave Hours and 4,023.77 Sick Leave Hours for the Government's Failure to Properly Calculate Leave**

Under the Back Pay Act, "pay, allowances, and differentials" includes "leave . . . and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. §550.803. Therefore, plaintiffs are entitled to either restoration of leave or, if the plaintiff is no longer employed by the Government, liquidation of annual leave and sick leave for the Agency's failure to properly calculate and accrue leave. See 5 U.S.C. § 6304 (restoration of leave) and 5 U.S.C. § 5551 (liquidation of leave).

**i. Annual Leave**

Since the fire fighters' regular tour of duty consists of seven, 24-hour shifts every 14 days, the fire fighters' leave should accrue on this basis as well. The federal regulations contain special provisions for employees with an uncommon tour of duty. The leave accrual rates are directly proportional (based on the number of hours the biweekly tour of duty and the accrual rate of the corresponding leave category) to the standard leave accrual rates to earn and use leave on an 80 hour biweekly tour of duty. See 5 C.F.R. §630.210.

Thus, according to the OPM website, the current leave accrual for those with uncommon tours of duty is:

- Those with less then 3 years of service—(4 hours) times (average number of hours per biweekly pay period) divided by 80 = biweekly accrual rate.
- Those with 3 years but less then 15 years of service—(6 hours) times (average number of hours per biweekly pay period) divided by 80 = biweekly accrual rate
- Those with more then 15 years of service—(8 hours) times (average number of hours per biweekly pay period) divided by 80 = biweekly accrual rate

See Annual Leave, OPM, http://www.opm.gov/oca/leave/html/annual.asp, Plaintiffs' Exhibit No. 35. The San Clemente fire fighters have accrued leave on the basis of 144 hour tour of duty until December 2003. Thus, each firefighter's leave should be adjusted going back to March 15, 1998 when the tour of duty changed, and the leave should be recalculated using a 168 hour regular tour of duty. Under the OPM's current rules for leave accrual, the fire fighters should accrue leave at rates of 8.4, 12.6 and 16.8 hours a pay period, based on years of service. In addition, because the fire fighters have an uncommon tour, the Government should have converted their leave balances to reflect the accelerated leave accrual rate applicable to employees with 168-hour schedules when they changed the tour of duty from 144 hours to 168 hours a pay period. See 5 C.F.R. § 630.210(b). Because of the improper calculations based on a six day, rather than a seven day tour of duty, there is a 1.2 (0-3 years of service); 1.8 (more then 3, less then 15 years of service), or a 2.4 (more then 15 years of service) hour difference in annual leave each pay period, depending on the fire fighters' length of service.

In addition, a federal employee may receive a lump-sum payment for any unused annual leave when he or she separates from federal service or enters on active duty in the armed forces and elects to receive a lump-sum payment. The Government calculates a lump-sum payment by multiplying the number of hours of accumulated and accrued annual leave by the employee's applicable hourly rate of pay, including overtime. The lump-sum payment for accumulated annual leave for the fire fighters would also significantly increase the amount of annual leave. See 5 CFR § 550.1306(c).

The plaintiffs are thus entitled to 7948.11 Hours of Annual Leave to be restored to their leave banks, or liquidated and paid in cash to those plaintiffs no longer employed by the Government. See Hearing Transcript, Nickerson, pp. 120-122 and Plaintiffs' Exhibit 40.

**ii. Sick Leave**

Similar to annual leave, sick leave is accrued by regular 80-hour biweekly pay period employees at a rate of 1/2 day (4 hours) for each pay period. For those with uncommon tours of duty, the sick leave accrual rate is also directly proportional to the standard leave accrual rates for an 80 hour biweekly tour of duty. See 5 C.F.R. §630.210. The fire fighters should accrue sick leave at a rate of 8.4 hours a pay period. In addition, the firefighters' accrual of sick leave should be adjusted to reflect the 168 hour biweekly pay period. The fire fighters' sick leave balances at the time the new schedule went into effect should be converted as well.

The SCI fire fighters have accrued leave on the basis of 144 hour tour of duty until December 2003. Thus, each fire fighters' sick leave should be adjusted going back to March 15, 1998 when the tour of duty changed, and the leave should be recalculated using a 168 hour regular tour of duty. The fire fighters should accrue leave at rates of 8.4 hours a pay period. In addition, because the fire fighters have an uncommon tour, the Government should have converted their leave balances to reflect the accelerated leave accrual rate applicable to employees with 168-hour schedules when they changed the tour of duty from 144 hours to 168 hours a pay period. See 5 C.F.R. § 630.210(b). Because the calculations were improperly based on a six day, rather than a seven day tour of duty, there is a 1.2 hour difference in sick leave each pay period.

The plaintiffs are thus entitled to 4,023.77 hours of Sick Leave to be restored to their leave banks, or liquidated and paid in cash to those plaintiffs no longer employed by the Government. See Hearing Transcript, Nickerson, pp. 122 - 123 and Plaintiffs' Exhibit 40.

#### b. The Plaintiffs Who Are FERS Employees are Owed $23,483.48 For the Government's Failure to Properly Contribute to the Plaintiffs' Thrift Savings Plan. CSRS Plaintiffs Are Entitled to Recalculation of their High Three if Those Years Fall between 1998 and 2003.

**i. FERS**

The Thrift Savings Plan (TSP) is a retirement savings and investment plan for federal employees. Congress established the TSP in the Federal Employees' Retirement System Act of 1986. See 5 U.S.C. 8431 et seq. The TSP offers federal employees the same type of savings and tax benefits that many private corporations offer their employees under "401(k)" plans. TSP regulations are published in Title 5 of the Code of Federal Regulations, Parts 1600–1690. In the civilian component of the TSP, employees covered by the Federal Employees' Retirement System (FERS) and the Civil Service Retirement System (CSRS) can contribute to the TSP. The participation rules are different for FERS and CSRS employees. The TSP is a defined contribution plan. The retirement income that an employee receives from their TSP account will depend on how much (both the employee and the Government, if you are a FERS employee) has been contributed to the employees' account during the employees working years and the earnings on those contributions. See, generally, Plaintiffs' Exhibit No. 36.

For the SCI fire fighters who are FERS employees, any change to their basic pay would also affect their TSP. This is because FERS employees are eligible for agency contributions where the Government will automatically contribute an amount equal to 1% basic pay each pay period into the employees TSP account. Employees receive these contributions whether or not they contribute their own money to a TSP account. In addition, if the

FERS employee contributes to their TSP account, the Government also makes matching contributions once the employee is eligible for them. Matching contributions apply to the first 5% of pay that you contribute each pay period. Contributions are matched dollar-for-dollar on the first 3% of contributed each pay period and 50 cents on the dollar for the next 2% of pay. See generally, TSP Features for Civilians, Understanding Agency Contributions, Plaintiffs' Exhibit No. 37.

The sum of all non-overtime hours that are part of a fire fighters' regular tour of duty, and the straight time portion of overtime pay for hours in a fire fighter's regular tour of duty is treated as basic pay for TSP purposes. Since the inclusion of 168 hours opposed to 144 hours per biweekly pay period result in a rise in the fire fighters' basic pay the Government would be required to match the equivalent percentages in the TSP. For every pay period, the plaintiffs' TSP contributions limit should be based on the 168 hour calculated amount -- an additional amount based on the above difference. This would increase the defendant's mandatory 1% Contribution based on the basic pay to the plaintiff fire fighters' TSP, as well as the Government's 5% match of plaintiff fire fighter's contribution. Each plaintiff fire fighter should have the Government's TSP contributions and matches recalculated and contributed based on the 168 hour tour of duty.

Under the Back Pay Act, "pay, allowances, and differentials" includes "leave . . . and other monetary employment benefits to which an employee is

entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. §550.803. Thus, the plaintiffs are entitled to TSP contributions amounting to $23,483.48.

**ii. <u>CSRS Employee</u>**

Federal firefighters who are under Civil Service Retirement System (CSRS) retire with a basic annuity, which is 50% of the employees' high three consecutive year average salary, plus 2% of the high three year average salary multiplied by years and months of service exceeding 20, plus unused sick leave. <u>See</u> OPM Law Enforcement and Fire Fighter CSRS Retirement, pp. 6-8. Plaintiffs' Exhibit No. 36.

Retirement benefits should have increased for the SCI fire fighters when the Government implemented the 168 hour tour of duty. This is because the sum of all non-overtime hours that are part of a fire fighters' regular tour of duty, and the straight time portion of overtime pay for hours in a fire fighter's regular tour of duty, are treated as "basic pay" when calculating retirement benefits, as well as life insurance premiums and severance pay. Since the fire fighters' pension and other benefits between March 15, 1998 and December 2003 accrued on the basis of 144 hours rather than 168 in a pay period, the additional 24 hours would have increased their basic pay.

The OPM requires that retirement deductions and benefits include the straight time portion of overtime hours in a fire fighter's regular tour of duty. 5 CFR § 550.1305(a)(1). Thus, since the SCI fire fighters' regular tour of duty was 168 hours every pay period, their retirement deductions and benefits must include the straight time portion of all 168 hours, rather than 144 hours as had been done. Obviously, this will increase the amount that the fire fighters can contribute to retirement and, in turn, would increase the amounts paid to them upon retirement.

Additionally, if a fire fighter is under the CSRS, his or her service will be increased by the days of unused sick leave to credit under a formal leave system. The days of unused sick leave that are added due to this action must be included for the fire fighters' number of years and months of service for annuity computation purposes.

Under the Back Pay Act, "pay, allowances, and differentials" includes "leave . . . and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. §550.803. Thus, the CSRS plaintiffs should have their retirement benefits, severance pay, additional sick leave included in his annuity computations.

### ii. The Plaintiffs' Basic Pay Claims Addressing the Calculation of Retirement Benefits and Thrift Savings Plan Contributions

The retirement issue is based on the Government's improper calculation of basic pay, using the improper 144 hour tour of duty, rather than the correct 168 hour tour of duty. This Court has jurisdiction over pay cases, and matters significantly entwined with pay issues. Unlike the cases relied upon by the Government, the plaintiffs are not seeking a claim under retirement statutes alone, but instead, seek overtime compensation and other accompanying recalculated benefits in accordance with Fire Fighter Pay Reform Act, 5 U.S.C. §5545b; 5 C.F.R. 550.1301 *et. seq*. See Hannon v. United States, 48 Fed. Cl. 15, 17 (Fed. Ct. Cl. 2000) (denying the Government motion to dismiss because the complaint stated the necessary elements of plaintiffs' claims, the Court of Federal Claims possessed jurisdiction over plaintiffs' claims for overtime compensation and premium pay, and requiring the plaintiffs to exhaust administrative channels was futile). As in Hannon, this case is not a "retirement" case, but rather a "pay" case, not only because a significant number of the plaintiffs have never applied for retirement credit and thus can have no claim at MSPB, but, also because, like those who have retired, all the plaintiffs are entitled to the proper basic pay calculations based on a 168 hour tour of duty afforded by the Fire Fighter Pay Reform Act. Otherwise stated, the plaintiffs allege that jurisdiction in this court is

premised on a statutory right to receive money in cases in which the plaintiffs have been deprived of pay by the federal government under 5 CFR §550.1305 and the Firefighter Pay Reform Act. See 5 U.S.C. §5545b. Thus, jurisdiction is proper here before the Federal Court of Claims.

**c. The Plaintiffs are Owed $1,575.06 in Back Pay for the Government's Failure to Properly Contribute to Plaintiffs' FEGLI**

The plaintiffs are also owed damages for the Government's failure to properly calculate the Federal Employees Group Life Insurance (FEGLI) contributions. See 5 U.S.C. §§ 8701-8716. The plaintiffs are owed $1,575.06.

**d. The Plaintiffs are Owed $159,697.52 in Interest Under the Back Pay Act for the Government's Failure to Properly Calculate the Basic Pay and Failure to Compensate for All Days of the 168 Hour Tour of Duty**

The Back Pay Act allows federal employees who "have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction" of compensation to collect back pay with ***interest*** for the compensation to which they would have otherwise been entitled. See 5 U.S.C. § 5596(b)(1)-(b)(2)(A)(emphasis supplied). An amount payable under the Back Pay Act "shall be payable with interest." Such interest shall be computed for the period beginning on the effective date of the withdrawal or reduction involved and ending on a date not more than 30 days before the date on which payment is made. This shall be computed at the rate or rates

in effect under section 6621(a)(1) of the Internal Revenue Code of 1986. The plaintiffs calculated interest using the rates provided by the OPM for Back Pay Act damages. See Hearing Transcript, Nickerson, pp. 137-38, Plaintiffs Exhibit 40. The plaintiffs are entitled to interest on all Back Pay Act damages, amounting to $159,697.52. See Plaintiffs' Exhibit No.40, page 1 (Basic Pay and 7th Day interest ($150,865.38 plus TSP Interest $8,832.14).

### B. The Plaintiffs are Owed Back Pay Damages Under the FLSA for the Government's Failure to Properly Include the Offshore Allowance in the FLSA Regular Rate for Overtime.

#### 1. The Government Failed To Properly Calculate The Plaintiff Fire Fighters' FLSA Regular Rate For Overtime

"[T]here is a statutory presumption [ ] that remuneration in any form is included in the regular rate calculation. ***The burden is on the employer to establish that the remuneration in question falls under an exemption***." Madison v. Resources For Human Development, Inc., 233 F.3d 175, 187 (3rd Cir. 2000), (emphasis added). Indeed, if an employer wishes to benefit from an exception and to avoid the general requirements of the FLSA, then it is fair and appropriate to require that employer to demonstrate that it has fully satisfied all the criteria of such an exception. Michigan Ass'n of Gov't Employees v. Michigan Dep't of Corrections, 992 F.2d 82, 83 (6th Cir. 1993). Accord: Herman v. Anderson Floor Co, 11 F. Supp. 2d 1038, 1042 (E.D. Wis. 1998) ("It is the employer upon whom the burden rests in

demonstrating that certain payments it has made should not be included in determining its employees' 'regular rate'"). When these principles are applied to the offshore allowance at issue here, the unmistakable conclusion is that the Government has violated 29 U.S.C. § 207(e) by failing to include all elements of a fire fighters' pay into the regular rate for the purpose computing FLSA overtime.

The Government has failed to include the fire fighters' offshore allowance in their regular rate for overtime. Pursuant to section 7(k) of the FLSA, 29 U.S.C. § 207(k), fire fighters are entitled to receive overtime pay at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 106 hours in a 14-day work period. See 29 C.F.R. § 553.230, see also 5 C.F.R. §550.1302, 5 C.F.R. §550.1304. The FLSA also requires that an employer include ***all*** remuneration for employment in the regular rate for these purposes, except for certain narrow exceptions specifically set forth in the statute. 29 U.S.C. § 207(e). These exceptions are limited to such items as gifts, discretionary bonuses, pension contributions which are inapplicable here.

On October 1, 1998, the Firefighter Pay Reform Act, Pub. L. 105-277, went into effect. Among other things, this law barred payment of any other premium pay to fire fighters, including night pay, Sunday pay, holiday pay, and hazardous duty pay. See 5 U.S.C. §5545b, see also OPM Document,

Firefighter Pay Reform Act, PL 105-277, http://www.opm.gov/retire /asd/htm/2001/01-107.htm (Plaintiffs' Exhibit No. 38.).

The law states that federal fire fighters **"**shall not receive premium pay**"** by other provisions of 5 USC §5541**.** See 5 USC § 5545b(d)(1). The Offshore Allowance is ***not*** found under 5 USC 5541, but rather, under 5 USC Sec. 5942. Since the fire fighters receive the offshore allowance**,** it is clear that the Offshore Allowance is not "premium" pay at all, but rather an allowance located in a completely different section of the law than "premium pay." Compare. 5 U.S.C. §5942 with 5 USC §5541. Allowances are not considered to be premium pay, such as shift differentials, but mandatory compensation for working in remote locations.

The Government has suggested several post-hoc reasons as to why the offshore allowance should not be included in the regular rate for calculation of overtime under the FLSA. First—that because the statute requires that the offshore allowance be paid "in addition to pay otherwise due" the employee, it somehow is exempted from the FLSA. Contrary to the Government's assertion, the plaintiffs do not argue that the offshore allowance be considered part of their ***basic pay***, but rather, be included in their ***regular rate*** under the FLSA. Basic pay and the regular rate ***are not***

the same thing.[1] 5 CFR §591.308 clearly prohibits the offshore allowance from being included when calculating an employees ***basic pay***.

The plaintiffs are not asking for the offshore allowance to be included in the basic pay, but rather, that it be included in their ***regular rate*** for overtime purposes. All remuneration, with a few exceptions, must be included in the FLSA regular rate. The simple fact that the offshore allowance is paid in addition to other pay otherwise due does not exclude it from being included in the regular rate.

The Government also argues that since the offshore allowance is not to exceed 10 dollars a day, it somehow can not be included in the regular rate. This argument is nonsensical. If a fire fighter only worked 106 hours in a 14 day pay period, he would only be paid his regular pay and the daily offshore allowance. Since the Government is working the fire fighters overtime, however, the offshore allowance ***must*** be included in the overtime rate. The plaintiffs are not requesting an offshore allowance of more than the statutory cap of $10.00, only that the offshore allowance actually paid be included in the regular rate for overtime hours worked, as required under the FLSA.

[1] "Basic pay" is a computation used to calculate annual and sick leave, retirement benefits, thrift saving plan contributions and other benefits for federal firefighters. The basic pay represents the straight-rate portion of overtime pay for overtime hours in the firefighter's regular tour of duty. 5 C.F.R. 550.1305. The FLSA defines "regular rate" as the rate at which an employee is employed including all remuneration for employment paid to, or on behalf of, the employee. See 29 U.S.C. § 207(e).

Incredibly, the Government feebly suggests that the offshore allowance is reimbursement for reasonable traveling expenses incurred by the employee. Offshore Allowance is not travel reimbursement, but rather, payment for days spent working at a remote location. The Offshore Allowance is a payment made to an employee "who is assigned to duty at a site so remote from the nearest established communities or suitable places of residence as to require an appreciable degree of expense, hardship, and inconvenience." It is remuneration for employment that must be included in the regular rate as it does not fall into any of the limited exceptions. Since it is mandated under 5 USC § 5942 that employees working at remote sites receive an allowance, it ***must*** be included when calculating FLSA overtime according to 5 C.F.R. §551.514 (addressing inclusion of non-discretionary bonuses in the regular rate for FLSA overtime). The Offshore Allowance does not represent reimbursement for expenses for travel expenses or similar payments as the fire fighters do not have such expenses, nor does it represent a premium pay. Thus, the Offshore Allowance is not excluded under 29 U.S.C. §207(e) or 5 U.S.C. 5545b. Since an Offshore Allowance is neither premium pay, nor does it fall within one of the exceptions to the inclusion in the FLSA overtime rate under section 207(e), it must be included in the rate at which FLSA overtime is paid to the fire fighter.

A group of postal officers similarly argued that the Government failed to include a Territorial Cost of Living Adjustment (TCOLA) in their FLSA

regular rate. The Court found that the TCOLA must be included in the FLSA regular rate, and that the Government was without a good faith defense for failing to properly calculate overtime. See Frank v. McQuigg, 950 F.2d 590 (9th Cir. 1991). Numerous federal courts have found fire fighters and other employees are entitled to include all remuneration in their FLSA regular rate. See e.g., Featsent v. City of Youngstown, 70 F.3d 900 (6th Cir. 1995)( holding that the City had violated the wage and hour law by failing to include the officers' longevity pay in their overtime calculations); O'Brien v. Town of Agawam, 350 F.3d 279, 296 (1st Cir. 2003) (holding that "the Town must include the officers' contractually guaranteed longevity pay in their FLSA regular rate"); Theisen v. City of Maple Grove, 41 F. Supp. 2d 932, 938 (D. Minn. 1999) (non-discretionary longevity payments must be included in the regular rate); IAFF Local 359 v. City of Gary, 1995 U.S. Dist. LEXIS 21729, 3 Wage & Hour Cas. 2d 1846 (N.D. Ind. 1995) ("In calculating the amount of backpay to be awarded to the firefighters, the City must include" longevity payments in the regular rate of pay); Landaas v. Canister Co., 188 F.2d 768, 771 (3rd Cir. 1951) (holding that attendance bonus "was clearly part of the regular rate of compensation of the employees"); Bibb Mfg. Co. v. Walling, 164 F.2d 179 (5th Cir. 1947), cert. denied, 333 U.S. 836 (1948) (holding that attendance incentive must be included in the regular rate).

The Government failed to include the offshore allowance paid to the plaintiffs when calculating the regular rate for FLSA overtime. The

Government owes the plaintiffs $164,503.02 in FLSA overtime damages. See Hearing Transcript, Nickerson, pp. 118-120; and Plaintiffs' Exhibit No. 40 ($103,369.35 + Pro Rata FLSA $61,133.67).

### 2. An Award of Liquidated Damages Equal To The Plaintiffs' Backpay Under The FLSA Is Clearly Warranted To Adequately Compensate Them

#### a. General Legal Principles

Section 216(b) of the FLSA provides that an employer "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages*." 29 U.S.C. §216(b) (emphasis added). Under the FLSA, it is well settled that liquidated damages are compensatory, not punitive in nature. Marshall v. Brunner, 668 F.2d 748, 753 (3rd Cir. 1982).[2] In light of the make-whole purposes of liquidated damages under the FLSA, the appellate courts have stressed that "[d]ouble damages are the norm, single damages the exception." Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986). Accord: Kinney v. District of Columbia, 994 F.2d 6, 12 (D.C. Cir. 1993); Martin v. Cooper Elec., 940 F.2d 896, 908 (3rd Cir. 1991).

[2] The Supreme Court long ago held that liquidated damages under the FLSA are intended to compensate employees for the delay in recovery of unlawfully withheld wages (Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 715 (1945)), and for various "damages too obscure and difficult of proof for estimate." Overnight Motor Transp. Co. v. Missell, 316 U.S. 572, 583-84 (1942). The Labor Department's regulations with respect to the FLSA also underscore the compensatory objectives of liquidated damages when an employee's wages are not paid "on time." 29 C.F.R. §790.22(a), note 137.

With the enactment of §11 of the Portal-to-Portal Act, 29 U.S.C. §260, Congress created a limited defense to the mandatory liquidated damages provision of §216(b). Essentially, this defense provides that the decision-maker has discretion to mitigate liquidated damages *if, and only if,* the employer demonstrates *both* good faith *and* reasonable grounds for believing that it was not in violation of the statute. Richards v. Marriott Corp., 549 F.2d 303, 305-06 (4th Cir. 1977), cert. denied, 433 U.S. 915 (1978); Spires v. Ben Hill County, 980 F.2d 683, 689 (11th Cir. 1993). Simply put, the employer has the "plain and substantial burden" of proving that its actions were objectively reasonable and prompted solely by subjective good faith. Richards v. Marriott, 549 F.2d at 306, citing, Wright v. Carnigg, 275 F.2d 448, 449 (4th Cir. 1960). Accord: Renfro v. City of Emporia, 948 F.2d 1529, 1540 (10th Cir. 1991). In the absence of such a showing, a full award of liquidated damages equal to backpay remains "mandatory". Richards v. Marriott Corp., 549 F.2d at 305-06.

"Good faith" in the FLSA context requires more than ignorance of the prevailing law or uncertainty about its development. "It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them." Reich v. SNET, 121 F.3d 58 (2nd Cir. 1997, citation omitted). Further, an employer's ignorance or misunderstanding of the requirements of the FLSA does not constitute "reasonable grounds" for believing that its actions complied with the statute within the meaning of 29

U.S.C. §260. Crenshaw v. Quarles Drilling Co., 798 F.2d 1345, 1351 (10th Cir. 1986); Marshall v. Brunner, 668 F.2d at 753. Cf. Castilla v. Givens, 704 F.2d 181, 194 (5th Cir. 1983)("an ostrich like cultivation of ignorance" does not shield an employer from its obligation to "determine the exact parameters of his statutory obligation").

Applying these principles to the facts presented here makes it clear that the Agency cannot meet its heavy burden of showing both good faith and reasonableness. Therefore, the grievants are entitled to a make-whole award of liquidated damages equal to their backpay compensation.

#### b. The Government Cannot Establish that Its Violation of the FLSA Was in Good Faith or Was Objectively Reasonable

The Government's "efforts" to come into compliance with the law has been pitiful at best. The Government's only two witnesses admitted the Government did not perform a review prior to the filing of the lawsuit to determine whether the offshore allowance should be included in the SCI fire fighters' FLSA regular rate. See Hearing Transcript, Steve Rumble, pp. 212 "I would not have considered the issue of the . . . offshore allowance to be an issue because it was specifically not addressed by the regulations." See also, Hearing Transcript, Greely, pp. 189-90, stating that inclusion of the offshore allowance or remote worksite allowance in the FLSA regular rate "***probably wasn't even brought up***" in 1998 when reviewing pay policy related to the enactment of the Fire Fighter Pay Reform Act.

Moreover, the Agency failed to present ***convincing*** evidence that the Agency did anything to ascertain the Agency's compliance with the FLSA after the grievance was filed. Ms Greely simply stated that after the lawsuit was filed, she and Mr. Rumble merely reviewed the CFR to determine whether the offshore allowance should be included in the regular rate. See also, Hearing Transcript, Greely, pp. 189-90.

The Government's "ostrich like cultivation of ignorance" does not shield it from its obligation to "determine the exact parameters of [its] statutory obligations." Castilla v. Givens, 704 F.2d 181, 194 (5th Cir. 1983). On this record, it is clear that the Government ***ignored*** its obligations with respect to the FLSA regular rate. As one court stated in an analogous context, "if he [the employer] did not know, it was because he did not look or looking, did not see, or want to see what was so plainly there." Mayhew, Inc. v. Wirtz, 413 F.2d 658, 663 (4th Cir. 1969). Accord: Spires v. Ben Hill County, 980 F.2d 683, 689-90 (11th Cir. 1993) (failure of employer to properly investigate and monitor compliance warranted award of full liquidated damages); Martin v. Cooper, 940 F.2d at 908 (employer has duty to investigate and properly follow the law even in the absence of employee complaints).

In addition, the Government did not keep up with the court decisions and arbitrator decisions involving the FLSA regular rate the same as or

similar to the ones covered by this lawsuit. See Hearing Transcript, Greely, p 189. There is no excuse for the Agency's failure to act.

In sum, the Agency cannot establish that it acted both in good faith and on reasonable grounds in treating employees at issue as FLSA exempt. Thus, a mandatory award of liquidated damages equal to backpay is required under 29 U.S.C. §216(b). The plaintiffs are entitled to an award of liquidated damages equal to the FLSA Back Pay award, *i.e.*, $164,503.02

### 3. The Plaintiffs are Entitled to a Three Year Rather than Two Year Statute of Limitations

Under 29 U.S.C. §255(a), employees are entitled to an award of a third year of backpay based upon evidence of a "willful" violation of the FLSA by the employer. The Supreme Court has held that a violation of the FLSA is willful within the meaning of §255(a) where ". . . the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988). In Richland Shoe, the Court adopted the same standard of willfulness that it articulated earlier in TWA, Inc. v. Thurston, 469 U.S. 111 (1985) (an action brought under the Age Discrimination in Employment Act).

In originally enunciating the "knowing or reckless disregard" standards, the Court in Thurston rejected TWA's argument that the willfulness test should require proof that the employer "intended" to violate

the law. 469 U.S. at 126, n. 19.[3] In reaching its determination, the Court cited some of its earlier decisions in various contexts in which the term "willfulness" was defined as a "careless disregard" for the controlling statute and an "indifference" to its requirements. 469 U.S. at 126-27. Accord: Hazen Paper Co. v. Walter Biggins, 507 U.S. 604, 617, 113 S. Ct. 1701, 123 L.Ed. 2d 338, 351 (1993) (in ADEA action, a showing of willfulness does not require proof of illegal motivation or outrageous behavior on the part of the employer).

For the same reasons outlined above with respect to liquidated damages, at a minimum, it is clear that for the time period covered by this lawsuit, the Government had a careless indifference or reckless disregard as to whether it was in compliance with the FLSA.[4] One need not look any further than the Governments completely inadequate review of whether the Offshore Allowance should be included in the FLSA regular rate for the fire fighters. See Hearing Transcipt, Steve Rumble, pp. 212 "I would not have considered the issue of the . . . offshore allowance to be an issue because it was specifically not addressed by the regulations."; Hearing Transcript,

---

[3] In the same vein, the Court cited with approval those courts which have found a willful violation of the FLSA even though the employer did not have an "evil motive or bad purpose." 469 U.S. at 126, n. 19. Accord: Furr v. AT&T Technologies, Inc., 824 F.2d 1537, 1546 (10th Cir. 1987).

[4] While the failure to act reasonably is not the dispositive test here, the absence of good faith and reasonableness bears on the issue of whether the Agency exhibited a reckless disregard and careless indifference for the legality of its behavior. See generally, Brock v. Willamowsky, 833 F.2d 11, 18 1006, 1012 (11th Cir. 1989).

Greely, pp. 189-90, stating that it "***probably wasn't even brought up***" in 1998 when reviewing pay policy related to the enactment of the Fire Fighter pay Reform Act. Ms Greely also stated that after the lawsuit was filed, she and Mr. Rumble only reviewed the CFR to determine whether the offshore allowance should be included in the regular rate. The Government failed to properly investigate whether the offshore allowance should be included in the regular rate. The Government offered no justification for its failure to perform any research on this issue.

Based on the Government careless indifference, as evidenced by its failure to correctly apply the FLSA regular rate to the plaintiff fire fighters or properly investigate or research the matter, a three year, rather than two year statute of limitations is appropriate under §255(a) of the FLSA. Simply put, the Government ignored obvious signals, performed no research, while all of the time reaping financial benefits from not paying the employees what they were due. In these circumstances, if the Government did not know it was in violation of the FLSA, it surely displayed a total indifference as to

whether its conduct comported with the well-recognized requirements of the law.[5]

Accordingly, consistent with the remedial purposes of the FLSA, the plaintiffs should be permitted to recover a third year of backpay compensation from the employer — an employer whom unlawfully withheld their compensation for a much longer period of time.

### E. Attorneys' Fees and Costs

The plaintiffs bring claims under both the Back Pay Act and the FLSA. The FLSA provides that the court "**shall** . . . allow reasonable attorney's fee to be paid by the defendant, and the cost of the action." See 29 U.S.C. §216(b) (emphasis added). It is well established that an award of attorneys' fees under the FLSA is mandatory. See, e.g., Roofers Local 307 v. G & M Roofing, 732

[5] A number of court decisions finding that the 'willfulness' standard has been satisfied support the plaintiffs' position here. Dole v. Solid Waste Services, Inc., 733 F.Supp. 895, 928 (E.D.Pa.) aff'd, 897 F.2d 521 (3rd Cir.), cert. denied, 497 U.S. 1024 (1990); Glen V. General Motors Corp., 658 F.Supp. 918, 927 (N.D. Ala. 1986), aff'd in pertinent part, 841 F.2d 1567 (11th Cir. 1988), cert denied, 109 S.Ct. 378 (reckless disregard standard satisfied in ADEA case where employer ignored clear signs that its practices were illegal and failed to make the effort to conform its conduct to the law); EEOC v. White and Son Enterprises, 881 F.2d 1006, 1012 (11th Cir. 1989) (willful violation of Equal Pay Act found where employer neglected to investigate its legal obligations regarding employment matters); Brock V. Williamowsky, 833 F.2d 11, 18 (2d Cir. 1987) (willful violation found where employer did not secure a timely opinion from the DOL or an attorney); EEOC v. State of Delaware, DHSS, 865 F.2d 1408, 1418-19 (3rd Cir. 1989) (district court erred in setting aside jury finding of willfulness where employer's official should have had suspicion of Equal Pay Act violation which, with a cursory investigation, would have lead to actual knowledge); Benjamin v. United Merchants and Mfrs., Inc., 873 F.2d 41, 44 (2nd Cir. 1989) (court upheld jury finding of willfulness in ADEA action where employer was indifferent and made no reasonable efforts to determine whether its actions were impermissible).

F.2d 495, 502 (6th Cir. 1984)(award of fees reflects Congressional intent that wronged employees may seek full wages without incurring expense of legal fees and costs); Shelton v. Ervin, 830 F.2d 182, 184 (11th Cir. 1988)(attorneys' fees are a mandatory and integral part of case), Beebe v. United States, 640 F.2d 1283, 1295 (Ct. Cl. 1981)(fee and expense award mandatory under FLSA to plaintiffs); IFPTE Local 529 and Army Corps of Engineers, 57 FLRA No. 174(2002)(arbitrator award not granting fees and costs in FLSA case reversed).

Under the Back Pay Act, "[a]n employee . . . may request payment of reasonable attorney fees related to an unjustified or unwarranted personnel action." 5 U.S.C. § 5596. First, the plaintiffs' must show that they prevailed on their claims before the Court. To satisfy the first requirement, a party need not completely prevail on every issue, but only substantially prevail, or prevail on a significant portion of the claims. Second, the plaintiffs must show that justice warrants the award. Here, the Government's five and one-half years of bureaucratic inertia, delay, and inaction is particularly egregious. Justice clearly warrants an award of reasonable attorneys' fees to the plaintiffs. The plaintiffs respectfully request this Court order an award of reasonable attorneys' fees and costs under the FLSA and the Back Pay Act. Following the Courts ruling, the plaintiffs will attempt to resolve the amount of attorneys' fees and costs owed with the Government. If the parties are unable to resolve the issue, the plaintiffs will file a claim for attorneys' fees and costs Pursuant to Local Rule 54.

## IV. CONCLUSION

Based on the undisputed facts of this case, the plaintiffs worked a 7 day, 168 hour tour of duty between March 15, 1998, and December 2003. The Government also failed to include the Offshore Allowance in the fire fighters' regular rate of pay for FLSA overtime purposes. As a result, and based on applicable law, the plaintiffs are entitled to:

- $29,806.44 in Back Pay damages for Offshore Allowance owed for working the 7th day of their regular tour of duty;
- Recalculation, restoration and/or liquidation of 7,948.11 hours of annual leave and 4,023.77 hours of sick leave;
- Recalculation and compensation of CSRS plaintiffs' high three and retirement benefits, computations, and calculations;
- $23,483.48 in additional thrift savings plan contributions for FERS plaintiffs;
- $1,575.06 in additional FEGLI contributions, as well as recalculations and compensation of any FEGLI entitlements earned or accrued;
- $210,265.68 in Back Pay damages for the Government's failure to compensate plaintiff fire fighters for the entire 168 hour regular tour of duty;
- $159,697.52 in Back Pay Act interest for the value of the plaintiffs' damages under the Back Pay Act;

- $164,503.02 back pay damages for the Government's failure to include the Offshore Allowance in the regular rate for overtime pursuant to the FLSA;
- A $164,503.02 award of liquidated damages equal to the plaintiffs' back pay in accordance with Section 216(b) of the FLSA;
- An Order that the statute of limitations shall be three years, rather than two years, in accordance with Section 260 of the FLSA;
- An award of reasonable attorneys' fees and costs in accordance with Section 216(b) and the Back Pay Act, 5 U.S.C. § 5596;
- Any other relief consistent with law.

Respectfully submitted,

Dated: February 2, 2007

s/David Ricksecker

David Ricksecker
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Attorney of Record

Thomas A. Woodley
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Of Counsel