# ATTACHMENT
# B

Case 1:04-cv-01575-TCW Document 36-1 Filed 11/03/2006 Page 1 of 26

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AGEE, TIMOTHY T., et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO: 04-1575C |
| | ) | Judge Wheeler |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

David Ricksecker
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Attorney of Record

Thomas A. Woodley
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Of Counsel

# TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 4

Argument ........ 4

I. Summary Judgment Standard ........ 4

II. Plaintiffs Are Entitled To An Award of Partial Summary Judgment On The Issue of Liability ........ 6

A. The Plaintiff Fire Fighters Are Entitled To An Offshore Allowance For All Days Worked ........ 6

B. The Plaintiff Fire Fighters' Basic Pay Was Improperly Calculated ........ 8

1. The Government Improperly Calculated and Disbursed Leave To The Plaintiff Fire Fighters ........ 11

a. Annual Leave ........ 11

b. Sick Leave ........ 13

2. The Government Failed To Properly Calculate The Basic Pay Computations For The Plaintiff Fire Fighters' Retirement Benefits ........ 14

3. The Government Improperly Calculated and Contributed To The Plaintiff Fire Fighters' Thrift Savings Plan ........ 16

C. The Government Failed To Properly Compensate Plaintiff Fire Fighters For The Seventh Day Of The Regular Tour of Duty ........ 18

D. The Government Failed To Properly Calculate The Plaintiff Fire Fighters' FLSA Regular Rate For Overtime ........ 19

CONCLUSION ........ 21

Case 1:04-cv-01575-TCW Document 59-3 Filed 02/02/2007 Page 4 of 27

## TABLE OF AUTHORITIES

### FEDERAL CASES


Adams v. United States, 3 Cl. Ct. 696, 698 (1983) .................... 4, 11

Agwiak v. U.S., 64 Fed. Cl. 203 (Fed. Ct. Cl 2003) .................... 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .................... 4, 5

Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998) .................... 3

Carroll v. U.S., 67 Fed. Cl. 82, (Fed. Cl. 2005) .................... 3

Celotex v. Catrett, 477 U.S. 317 (1986) .................... 4, 5

Dairyland Power Coop. v. United States, 16 F.3d 1197 (Fed. Cir. 1994) .................... 5

Enzo Biochem, Inc. v. General-Probe Inc., 285 F.3d 1013 (Fed.Cir. 2002) .................... 4

Jackson v. United States, 428 F.2d 844 (Ct. Cl. 1970) .................... 3

Lyons v. United States, 5 Cl. Ct. 752 (1984) .................... 4, 11

Process Control Techs. v. United States, 53 Fed Cl. 71 (2002) .................... 4

Sacco v. United States, 63 Fed. Cl. 424 (Fed. Cl. 2004) .................... 3


### FEDERAL REGULATIONS


5 C.F.R. §304 .................... 6

5 C.F.R. §550.1301 .................... 3, 8

5 C.F.R. 550.1302 .................... 7, 8, 18, 20

5 C.F.R. §550.1305 .................... 1, 2, 7, 8, 9, 15

5 C.F.R. §550.1306 .................... 13

5 C.F.R. §550.701 .................... 15

Case 1:04-cv-01575-TCW Document 59-3 Filed 02/02/2007 Page 5 of 27

5 C.F.R. §550.803 .......... 11

5 C.F.R. §551.513 .......... 21

5 C.F.R. §551.514 .......... 21

5 C.F.R. §591.304(a) .......... 6

5 C.F.R. §630.210 .......... 11, 13
12, 13, 14

29 C.F.R. §553.230 .......... 20

## STATUTES

5 U.S.C. §5541 .......... 20

5 U.S.C. §5545b .......... 2, 3, 9
19, 20, 22

5 U.S.C. §5942 .......... 3, 5, 20, 21

5 U.S.C. §5942 .......... 2

5 U.S.C. §6301 .......... 4

5 U.S.C. §6303 .......... 2

5 U.S.C. §8431 .......... 16

5 U.S.C. §8432 .......... 2

29 U.S.C. §207 .......... 2, 19, 20, 22

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Timothy T. Agee, *et al.*, respectfully submit this memorandum in support of their motion for partial summary judgment as to defendant's liability pursuant to, 28 U.S.C. Section 1346(a)(2); 5 U.S.C. Sections 5545b, 5551, 5552, 5596, 5942, 6303, 6304, 6306, 6307, 6308; the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), (o) (k), 216(b); and 5 C.F.R. §550.1305.

## INTRODUCTION

The plaintiffs are current or former fire fighters employed by the defendant, United States Department of the Navy, on San Clemente Island (SCI). Facts ¶1, 2. They bring this action because the defendant has failed to pay and disburse to them their proper offshore allowance, Title 5 overtime compensation, FLSA overtime, annual leave, sick leave, retirement benefits and thrift savings plan contributions. The record of undisputed facts, as supported by the depositions of the defendant's 30(b)(6) representatives, the sworn declaration, exhibits and the applicable law discussed *herein*, establish: (1) the defendant has failed to properly compensate the fire fighters' their offshore allowance under 5 U.S.C. §§5942, 5596; (2) the defendant has failed to properly calculated, disburse, and compensate the fire fighters' annual leave and sick leave pursuant to 5 U.S.C. §6303, 6307; (3) the defendant has failed to properly calculate, disburse, and contribute the fire fighters' retirement benefits under 5 C.F.R. §550.1305; and (4) the defendant

Case 1:04-cv-01575-TCW Document 59-3 Filed 02/02/2007 Page 7 of 27

has failed to properly calculate, disburse, and contribute to the fire fighters' thrift savings plan under 5 U.S.C. §§8432 and 8432a; (5) the defendant has failed to properly compensate the fire fighters under 5 U.S.C. § 5545b; and (6) the defendant has failed to pay the fire fighters overtime compensation at one and one-half times their regular rate of pay for all overtime hours worked as required by 29 U.S.C. §207(a) and (k), and 5 U.S.C. 5545b.

The fire fighters' claims arise from the Government's implementation of a 7-day, 168 hour tour of duty on March 15, 1998, while continuing to treat the fire fighters as if they worked a 6-day, 144 hour tour of duty. Facts ¶4,6,7,13, 14. The firefighters worked a 168 hour tour of duty, yet the government calculated their pay, benefits and leave using only a 144 hour tour of duty, resulting in a denial of pay and benefits to the fire fighters. Facts ¶¶13-19.

The Government did not compensate the required Offshore Allowance to fire fighters who worked the 7th day of their regular work schedule. Fact ¶13. The defendant improperly used a 144 hour basic pay computation instead of the correct 168 hour computation to calculate leave, retirement benefits and thrift savings plan contributions. Fact ¶14. In addition, the Government failed to pay fire fighters for their 168 hour regular tour of duty if a fire fighter was on leave. Fact ¶20. Finally, the Offshore Allowance has not been included in the regular rate of pay for computing the fire fighters' overtime, in violation of the FLSA. Fact ¶21.

Case 1:04-cv-01575-TCW Document 39-1 Filed 10/03/2006 Page 7 of 26

The Government was aware of the SCI fire fighters concerns regarding their pay and other benefits when the 168 hour work schedule was implemented. Fact ¶10. The Government, through a combination of prolonged bureaucratic inertia, delay, and negligence, put off properly compensating the fire fighters under a 168 hour tour of duty for more then five years. Facts ¶9.

The plaintiffs are required to show "some provision of law other than the Back Pay Act" that can be interpreted to mandate money damages to an employee suffering an unjustified or unwarranted personnel action before the Back Pay Act may be relied on to invoke the Court of Federal Claims jurisdiction. See Sacco v. United States, 63 Fed. Cl. 424 (Fed. Cl. 2004). The Back Pay Act alone does not confer independent jurisdiction upon the Court of Federal Claims. See Carroll v. U.S., 67 Fed. Cl. 82, 85 (Fed. Cl. 2005) Federal pay statutes, however, generally are money mandating. See Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998)(Fair Labor Standards Act); Jackson v. United States, 428 F.2d 844, 845-46 (Ct. Cl. 1970)(federal basic pay statute). The Government's failure to calculate FLSA overtime and failure to properly pay the Offshore Allowance under 5 U.S.C. §5942 provides jurisdiction in that these statutes provide money damages. In addition, jurisdiction for the Government's failure to properly calculate and accrue annual and sick leave is found here, because a valid claim for restoration of leave under § 6304(d), and liquidation under § 5551 of the leave so restored,

is cognizable in the Court of Federal Claims. See e.g., Lyons v. United States, 5 Cl. Ct. 752 (1984) and Adams v. United States, 3 Cl. Ct. 696, 698 (1983). The Government's failure to comply with 5 U.S.C. 5545b and 5 C.F.R. §550.1301 et seq., and the provisions regarding the Offshore Allowance, the FLSA and 5 U.S.C. 6301 et seq. clearly are money mandating statutes subject to the jurisdiction of the Court of Federal Claims.

## STATEMENT OF FACTS

In accordance with Local Rule 56.1(h) the plaintiffs' Proposed Findings of Uncontroverted Fact is submitted under separate cover.

## ARGUMENT

### I. SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the rules of this Court, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322 (1986). A material fact is one that might affect the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine only if the evidence is such that a reasonable decision maker could return a verdict for the nonmoving party. Id. A summary judgment procedure isolates and disposes of factually unsupported claims or defenses, Celotex, at 323-24 (1986), serves judicial economy, and saves time and expense when a trial is not needed.

Case 1:04-cv-01575-TCW Document 36-3 Filed 11/03/2006 Page 9 of 26

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. Id. at 324. Summary judgment must be granted when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof" and the moving party has "demonstrate[d] the absence of a genuine issue of material fact." Id. at 323. "The moving party . . . need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing Celotex, 477 U.S. at 325). The Supreme Court has instructed that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party to return a verdict for that party." Id. at 249. "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party

to summary judgment as a matter of law." Dairyland, 16 F.3d at 1202 (citing Celotex, 477 U.S. at 323).

## II. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY

### A. The Plaintiff Fire Fighters Are Entitled to an Offshore Allowance for all Days Worked

The Government did not properly calculate and pay the fire fighters' Remote Worksite Allowance (Offshore Allowance) following the March 1998 change in work schedule and the fire fighters' tour of duty. The Offshore Allowance provides additional compensation to fire fighters who must work seven day schedules at such a remote location. Fact ¶13. The allowance is up to $10.00 a day. 5 U.S.C. §5942. From March 15, 1998 to December 2003, the Government only paid SCI fire fighters their Offshore Allowance for six days, even though the fire fighters were actually working a 7-day tour of duty. Fact ¶13. The Government began including payment for seven days of Offshore Allowance in December, 2003. Fact ¶9. The Government, however, has refused to pay the affected fire fighters any backpay for the Offshore Allowance earned on the seventh day during the time between March 15, 1998 to December, 2003 when the fire fighters worked the identical 7-day schedules that they worked after December, 2003. Fact ¶7

The fire fighters are entitled to the Offshore Allowance payment pursuant to 5 U.S.C. §5942—which addresses duty at remote worksites. A duty post shall be determined to be a remote duty post for basic allowance

eligibility purposes when daily commuting is impractical because the location of the duty post and available transportation are such that agency management requires employees to remain at the duty post for their workweek as a normal and continuing part of their conditions of employment. 5 C.F.R. § 591.304(a)(2). Here, the fire fighters work on SCI, which is an island located 55 nautical miles (nm) south of Long Beach and 68 nm west of San Diego. Fact ¶11. This location is farther then 50 miles from the nearest established suitable place of residence, daily commuting is impractical, and the employees are required to remain at the duty post during the workweek, and the post can only be reached by boat or aircraft. See Fact ¶12. Thus, it qualifies as a duty post at a remote worksite. See 5 C.F.R. 304(a)(1), (2) and (3); see also Agwiak v. United States, 64 Fed. Cl. 203 (Fed. Ct. Cl. 2003)(addressing remote work allowances).

Indeed, the Government has already designated this as a remote work location. Fact ¶12. Thus, the fire fighters are entitled to this payment for each day worked, and are entitled to backpay for the Government's failure to properly pay the offshore allowance for the seventh day worked. The plaintiffs are entitled to backpay for the days that were worked that the Offshore Allowance was not paid.[1]

[1] Using the fire fighters' duty schedule and pay records, this should be fairly easy to determine.

Case 1:04-cv-01575-TCW Document 36-1 Filed 11/03/2006 Page 12 of 26

### B. The Plaintiff Fire Fighters' Basic Pay was Improperly Calculated

"Basic pay" is a computation used to calculate annual and sick leave, retirement benefits, thrift saving plan contributions and other benefits for federal firefighters. The basic pay represents the straight-rate portion of overtime pay for overtime hours in the firefighter's regular tour of duty retirement, Thrift Savings Plan, life insurance, severance pay, non-foreign cost of living allowance, post differential and certain other purposes. 5 C.F.R. 550.1305. The extra half-rate overtime pay for those overtime hours is not considered basic pay for these purposes. For example, the SCI fire fighters work 168 hours in their regular tour of duty. Their basic pay is their hourly rate multiplied by 168 hours. While the fire fighters earn time and one-half overtime for all hours worked over 106 under the FLSA, only the straight hourly rate would be used when determining their basic pay.

In this case, the Government changed the fire fighters' work schedule and regular tour of duty from a 144 hour work period, to a 168 work period on March 15, 1998. The Government, however, continued to calculate the fire fighters' basic pay using the 144 hour tour of duty. The fire fighters' annual rate of basic pay is fixed under the rate schedule applicable to the position held by the fire fighter. Fire fighter hourly rate of basic pay is computed by dividing the applicable annual rate of basic pay (including locality pay) by 2756 hours. See 5 CFR §550.1305. A fire fighters regular tour of duty is the official work schedule, as established by the employing agency on a regular

and recurring basis. See 5 CFR §550.1302 . A fire fighter's straight time portion of overtime pay is calculated using the fire fighter's hourly rate of basic pay multiplied by the number of overtime hours in the fire fighter's regular tour of duty.

Basic pay is the sum of pay for non-overtime hours that are part of a fire fighter's regular tour of duty and the straight time portion of overtime pay for hours in a fire fighter's regular tour of duty only for retirement benefits and certain other matters. The following methodology applies to fire fighters who usually work 24 hour shifts and have a regularly established workweek of at least 53 hours (on average if workweek varies):

(1) Derive basic fire fighter hourly rate by dividing the GS annual rate (including locality pay) by 2756 hours;

(2) Multiply the basic fire fighter rate times the number of non-overtime hours in the applicable period (e.g. maximum 106 hours in a biweekly pay period);

(3) The straight time portion of overtime for hours in a regular tour of duty is derived by multiplying the applicable fire fighter hourly rate of basic pay by the number of overtime hours in the regular tour of duty;

(4) Multiply the basic firefighter rate by the number of hours in the regularly established workweek to determine the amount of pay that is creditable for retirement, TSP basic pay, life insurance, severance pay, etc.

See OPM Sample Pay Calculation, Attachment A; see also 5 CFR §550.1301, et seq.

The Government changed the fire fighters' work schedule from a 144 hour work period to a 168 hour work period on March 15, 1998, thus

establishing a new regular tour of duty. See 5 C.F.R. §550.1302. The Government, however, failed to properly calculate the fire fighter's basic pay until December 2003. Fact ¶9. The Governments' failure to properly calculate the basic pay is absolutely contrary to the provisions found in 5 CFR §550.1305 and the Firefighter Pay Reform Act. See 5 U.S.C. §5545b. Indeed, the Governments' implementation of a "regular tour of duty" policy appears to be no more than a combination of bureaucratic inertia and an attempt to avoid disbursement and payment of leave, retirement benefits and other benefits to which the fire fighters are entitled and the Government began paying after December 2003. The undisputed evidence demonstrates that the plaintiffs' work schedules did change in March, 1998, that they were working a regularly scheduled 168 hour tour of duty, and that the Government failed to file the paperwork for five years—improperly denying the fire fighters the benefits that they are entitled to under 5 C.F.R. §550.1301, *et seq*. See Fact ¶9.

The fire fighters' regular tour of duty consists of seven, 24-hour shifts every 14 days. Thus, the fire fighters' basic pay should accrue on this basis as well. See 5 C.F.R. §630.210; 5 C.F.R. §550.1305. The firefighters' basic pay was improperly calculated using the 144 hour schedule, rather than the 168 hour schedule. The fire fighters are owed additional annual leave, sick leave, retirement benefits, and thrift saving plan contributions since these elements were incorrectly calculated and disbursed. Under the Back Pay Act,

Case 1:04-cv-01575-TCW Document 36-1 Filed 11/03/2006 Page 15 of 26

"pay, allowances, and differentials" includes "leave . . . and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." 5 C.F.R. §550.803. Pursuant to this authority, the fire fighters are entitled to additional calculation of annual leave, sick leave, retirement benefits, and thrift savings contributions.

**1. The Government Improperly Calculated and Disbursed Leave to the Plaintiff Fire Fighters**

Jurisdiction for the Government's failure to properly calculate and accrue annual and sick leave because a valid claim for restoration of leave under § 6304(d) and liquidation under § 5551 of the leave so restored is cognizable in this Court. See Lyons v. United States, 5 Cl. Ct. 752 (1984) and Adams v. United States, 3 Cl. Ct. 696, 698 (1983).

**a. Annual Leave**

Since the fire fighters' regular tour of duty consists of seven, 24-hour shifts every 14 days, the fire fighters' leave should accrue on this basis as well. The federal regulations contain special provisions for employees with an uncommon tour of duty. The leave accrual rates are directly proportional (based on the number of hours the biweekly tour of duty and the accrual rate of the corresponding leave category) to the standard leave accrual rates to earn and use leave on an 80 hour biweekly tour of duty. See 5 C.F.R. §630.210.

Thus, according to the OPM website, the current leave accrual for those with uncommon tours of duty is:

- Those with less then 3 years of service—(4 hours) times (average number of hours per biweekly pay period) divided by 80 = biweekly accrual rate.
- Those with 3 years but less then 15 years of service—(6 hours) times (average number of hours per biweekly pay period) divided by 80 = biweekly accrual rate
- Those with more then 15 years of service—(8 hours) times (average number of hours per biweekly pay period) divided by 80 = biweekly accrual rate

See Annual Leave, OPM, http://www.opm.gov/oca/leave/html/annual.asp (Attachment B). The San Clemente fire fighters have accrued leave on the basis of 144 hour tour of duty until December 2003. Thus, each firefighter's leave should be adjusted going back to March 15, 1998 when the tour of duty changed, and the leave should be recalculated using a 168 hour regular tour of duty. Under the OPM's current rules for leave accrual, the fire fighters should accrue leave at rates of 8.4, 12.6 and 16.8 hours a pay period, based on years of service. In addition, because the fire fighters have an uncommon tour, the Government should have converted their leave balances to reflect the accelerated leave accrual rate applicable to employees with 168-hour schedules when they changed the tour of duty from 144 hours to 168 hours a pay period. See 5 C.F.R. § 630.210(b). Because of the improper calculations based on a six day, rather than a seven day tour of duty, there is a 1.2 (0-3 years of service); 1.8 (more then 3, less then 15 years of service), or a 2.4

(more then 15 years of service) hour difference in annual leave each pay period, depending on the fire fighters' length of service.

In addition, a federal employee may receive a lump-sum payment for any unused annual leave when he or she separates from federal service or enters on active duty in the armed forces and elects to receive a lump-sum payment. The Government calculates a lump-sum payment by multiplying the number of hours of accumulated and accrued annual leave by the employee's applicable hourly rate of pay, including overtime. The lump-sum payment for accumulated annual leave for the fire fighters would also significantly increase the amount of annual leave. See 5 CFR § 550.1306(c).

**b. Sick Leave**

Similar to annual leave, sick leave is accrued by regular 80-hour biweekly pay period employees at a rate of 1/2 day (4 hours) for each pay period. For those with uncommon tours of duty, the sick leave accrual rate is also directly proportional to the standard leave accrual rates for an 80 hour biweekly tour of duty. See 5 C.F.R. §630.210. The fire fighters should accrue sick leave at a rate of 8.4 hours a pay period. In addition, the firefighters' accrual of sick leave should be adjusted to reflect the 168 hour biweekly pay period. The fire fighters' sick leave balances at the time the new schedule went into effect should be converted as well.

The SCI fire fighters have accrued leave on the basis of 144 hour tour of duty until December 2003. Fact ¶17. Thus, each fire fighters' sick leave

should be adjusted going back to March 15, 1998 when the tour of duty changed, and the leave should be recalculated using a 168 hour regular tour of duty. The fire fighters should accrue leave at rates of 8.4 hours a pay period. In addition, because the fire fighters have an uncommon tour, the Government should have converted their leave balances to reflect the accelerated leave accrual rate applicable to employees with 168-hour schedules when they changed the tour of duty from 144 hours to 168 hours a pay period. See 5 C.F.R. § 630.210(b). Because the calculations were improperly based on a six day, rather than a seven day tour of duty, there is a 1.2 hour difference in sick leave each pay period.

**2. The Government Failed to Properly Calculate the Basic Pay Computations for the Plaintiff Fire Fighters' Retirement Benefits**

Federal firefighters who are under Civil Service Retirement System (CSRS) retire with a basic annuity, which is 50% of the employees' high three consecutive year average salary, plus 2% of the high three year average salary multiplied by years and months of service exceeding 20, plus unused sick leave. See OPM Law Enforcement and Fire Fighter CSRS Retirement, pp. 6-8. (Attachment C).

Retirement benefits should have increased for the SCI fire fighters when the Government implemented the 168 hour tour of duty. This is because the sum of all non-overtime hours that are part of a fire fighters'

regular tour of duty, and the straight time portion of overtime pay for hours in a fire fighter's regular tour of duty, are treated as "basic pay" when calculating retirement benefits, as well as life insurance premiums and severance pay. Since the fire fighters' pension and other benefits between March 15, 1998 and December 2003 accrued on the basis of 144 hours rather than 168 in a pay period, the additional 24 hours would have increased their basic pay.

The OPM requires that retirement deductions and benefits include the straight time portion of overtime hours in a fire fighter's regular tour of duty. 5 CFR § 550.1305(a)(1). Thus, since the SCI fire fighters' regular tour of duty was 168 hours every pay period, their retirement deductions and benefits must include the straight time portion of all 168 hours, rather than 144 hours as had been done. Obviously, this will increase the amount that the fire fighters can contribute to retirement and, in turn, would increase the amounts paid to them upon retirement. See Attachment C.

If the fire fighters' regular tour of duty is 168 hours rather than 144 hours, the fire fighters' basic pay would also increase severance pay. Severance pay is addressed in 5 C.F.R. §§550.701 – 713 and usually only applies when an employee is removed by involuntary separation. Any plaintiff fire fighters that who received severance pay should have that pay recalculated and receive backpay.

Case 1:04-cv-01575-TCW Document 59-3 Filed 02/02/2007 Page 21 of 27

In addition, a fire fighters' increased accrual rate of leave will affect when he or she is eligible for retirement, because a federal employee may use annual leave to establish initial eligibility for retirement in reduction-in-force and other restructuring situations. Additionally, if a fire fighter is under the CSRS, his or her service will be increased by the days of unused sick leave to credit under a formal leave system. The days of unused sick leave that are added are used only in counting the number of years and months of service for annuity computation purposes.

### 3. The Government Improperly Calculated and Contributed to the Plaintiff Fire Fighters' Thrift Savings Plans

The Thrift Savings Plan (TSP) is a retirement savings and investment plan for federal employees. Congress established the TSP in the Federal Employees' Retirement System Act of 1986. See 5 U.S.C. 8431 et seq. The TSP offers federal employees the same type of savings and tax benefits that many private corporations offer their employees under "401(k)" plans. TSP regulations are published in Title 5 of the Code of Federal Regulations, Parts 1600–1690. In the civilian component of the TSP, employees covered by the Federal Employees' Retirement System (FERS) and the Civil Service Retirement System (CSRS) can contribute to the TSP. The participation rules are different for FERS and CSRS employees. The TSP is a defined contribution plan. The retirement income that an employee receives from their TSP account will depend on how much (both the employee and the Government, if you are a FERS employee) has been contributed to the

Case 1:04-cv-01575-TCW Document 30-1 Filed 11/03/2006 Page 21 of 26

employees' account during the employees working years and the earnings on those contributions.

For the SCI fire fighters who are FERS employees, any change to their basic pay would also affect their TSP. This is because FERS employees are eligible for agency contributions where the Government will automatically contribute an amount equal to 1% basic pay each pay period into the employees TSP account. Employees receive these contributions whether or not they contribute their own money to a TSP account. In addition, if the FERS employee contributes to their TSP account, the Governemnt also makes matching contributions once the employee is eligible for them. Matching contributions apply to the first 5% of pay that you contribute each pay period. Contributions are matched dollar-for-dollar on the first 3% of contributed each pay period and 50 cents on the dollar for the next 2% of pay. See generally, TSP Features for Civilians, Understanding Agency Contributions, www.tsp.gov, Attachment D.

The sum of all non-overtime hours that are part of a fire fighters' regular tour of duty, and the straight time portion of overtime pay for hours in a fire fighter's regular tour of duty is treated as basic pay for TSP purposes. Since the inclusion of 168 hours opposed to 144 hours per biweekly pay period result in a rise in the fire fighters' basic pay the Government would be required to match the equivalent percentages in the TSP. For every pay period, the plaintiffs' TSP contributions limit should be based on the 168

Case 1:04-cv-01575-TCW Document 36-1 Filed 11/03/2006 Page 22 of 26

hour calculated amount -- an additional amount based on the above difference. This would increase the defendant's mandatory 1% Contribution based on the basic pay to the plaintiff fire fighters TSP, as well as the Government's 5% match of a plaintiff fire fighter's contribution. Each plaintiff fire fighter should have the Government's TSP contributions and matches recalculated and contributed based on the 168 hour tour of duty.

### C. The Government Failed To Properly Compensate Plaintiff Fire Fighters For The Seventh Day Of The Regular Tour of Duty

Federal fire fighters are compensated using the applicable GS annual rate of basic pay divided by a 2756 hourly factor to derive the "firefighter hourly rate." See 5545b, and 5 C.F.R. 550.1303. Federal fire fighters receive the fire fighter hourly rate for all hours worked. For hours worked over 106 hours in a 14 day work period, overtime must be paid. The fire fighters receive time and one half pay for all overtime hours worked. Fire fighters are compensated based on their regular tour of duty.

When fire fighters work 168 hours, the amount of overtime pay they received is unaffected by the length of their tour of duty. If a fire fighter, however, does not work the seventh day, the fire fighter is still paid as if he or she works the regular 168 hour tour of duty. See 5 CFR § 550.1302 (overtime hours mean hours of work in excess of 106 hours in a pay period), §550.112(hours of work includes leave with pay for purposes of overtime computations). That is how the fire fighters are currently compensated. The

Case 1:04-cv-01575-TCW Document 36-1 Filed 11/03/2006 Page 23 of 26

Government did not compensate the SCI fire fighters for the seventh day of their regular tour of duty contrary to 5 USC Sec. 5545b.

### D. The Government Failed To Properly Calculate The Plaintiff Fire Fighters' FLSA Regular Rate For Overtime

The Offshore Allowance earned by the fire fighters must be included in the regular rate for all overtime compensation under the FLSA. Pursuant to section 7(k) of the FLSA, 29 U.S.C. § 207(k), fire fighters are entitled to receive overtime pay at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 106 hours in a 14-day work period. See 29 C.F.R. § 553.230, see also 5 C.F.R. §550.1302, 5 C.F.R. §550.1304. In addition, the FLSA requires that an employer include ***all*** remuneration for employment in the regular rate for these purposes, except for certain narrow exceptions specifically set forth in the statute. 29 U.S.C. § 207(e). These exceptions are limited to such items as gifts, discretionary bonuses, pension contributions, and payments for certain periods when no work is performed. These exceptions are inapplicable here.

On October 1, 1998, the Firefighter Pay Reform Act, Pub. L. 105-277, went into effect. Among other things, this law barred payment of any other premium pay to fire fighters, including night pay, Sunday pay, holiday pay, and hazardous duty pay. See 5 U.S.C. §5545b, see also OPM Document, Firefighter Pay Reform Act, PL 105-277, http://www.opm.gov/retire /asd/htm/2001/01-107.htm (Attachment E). The law states that federal fire

Case 1:04-cv-01575-TCW Document 59-3 Filed 02/02/2007 Page 25 of 27

fighters "shall not receive premium pay" by other provisions of 5 USC §5541. See 5 USC § 5545b(d)(1). The Offshore Allowance, however, is not "premium" pay, but rather an allowance located in a completely different section of the law than "premium pay." Compare. 5 U.S.C. §5942 with 5 USC 5541. Allowances are not considered to be premium pay, such as shift differentials, but mandatory compensation for working in remote locations.

OPM's regulations state that "[o]vertime pay . . . shall be paid in addition to all pay, to which the employee is entitled under title 5, United States Code, or any other authority. An employee entitled to overtime pay under this subpart and overtime pay under any authority outside of title 5, United States Code, shall be paid under whichever authority provides the greater overtime pay entitlement in the workweek." 5 CFR §551.513. The Offshore Allowance should clearly be included when calculating the fire fighters' FLSA overtime compensation.

The Offshore Allowance is payment for days spent working at a remote location. It is remuneration for employment that must be included in the regular rate as it does not fall into any of the limited exceptions. Since it is mandated under 5 USC § 5942 that employees working at remote sites receive an allowance, it must be included when calculating FLSA overtime. See 5 C.F.R. §551.514 (addressing inclusion of non-discretionary bonuses in the regular rate for FLSA overtime). The Offshore Allowance is a payment made to an employee "who is assigned to duty at a site so remote from the

nearest established communities or suitable places of residence as to require an appreciable degree of expense, hardship, and inconvenience." The Offshore Allowance does not represent reimbursement for expenses for travel expenses or similar payments, nor does it represent a premium pay. Thus, the Offshore Allowance is not excluded under 29 U.S.C. §207(e) or 5 U.S.C. 5545b. Since an Offshore Allowance is neither premium pay, nor does it fall within one of the exceptions to the inclusion in the FLSA overtime rate under section 207(e), it must be included in the rate at which FLSA overtime is paid to the fire fighter.

## CONCLUSION

Based on the undisputed facts of this case, the plaintiffs worked a 7 day, 168 hour tour of duty between March 15, 1998, and December 2003. As a result, and based on applicable law, the plaintiffs are entitled to:

- backpay for Offshore Allowance owed for working the 7th day of their regular work schedule;
- recalculation and disbursement of annual and sick leave, retirement benefits and thrift savings plan contributions under the 168 hour tour of duty;
- compensation for the full 168 hour regular tour of duty if a fire fighter was on leave on the seventh day; and
- backpay for the failure to include the Offshore Allowance in the regular rate for overtime pursuant to the FLSA.

Case 1:04-cv-01575-TCW Document 39-3 Filed 02/02/2007 Page 27 of 27

Accordingly, plaintiffs respectfully submit that their motion for partial summary judgment as to the Government's liability should be granted.

Respectfully submitted,

Dated: November 3, 2006

s/David Ricksecker

David Ricksecker
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Attorney of Record

Thomas A. Woodley
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Of Counsel