# In the United States Court of Federal Claims

No. 04-1575C

(Filed: May 23, 2007)

| | |
|---|---|
| TIMOTHY T. AGEE et al., Plaintiffs, v. THE UNITED STATES, Defendant. | Change in Firefighters' Tour of Duty; Back Pay Act; Fair Labor Standards Act; Firefighters Pay Reform Act; Remote Worksite Allowance; Uncommon Work Tour. |

*David Ricksecker*, with whom were *Thomas A. Woodley*, and *Gregory K. McGillivary*, Woodley & McGillivary, Washington, D.C., for Plaintiffs.

*Roger A. Hipp*, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Todd M. Hughes*, Assistant Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

This case involves the claims of firefighters employed by the U.S. Department of the Navy ("the Navy") on San Clemente Island near the coast of southern California. Plaintiffs allege that they are entitled to additional compensation and benefits effective March 15, 1998 when they converted from a 144-hour to a 168-hour biweekly tour of duty. The Navy paid Plaintiffs for the additional 24 hours of work each pay period, but did not properly accrue annual leave, sick leave, remote worksite allowances, thrift savings contributions, and other retirement benefits for this extra day of work. Inexplicably, through bureaucratic neglect, the Navy allowed these payment errors to persist for more than 5-1/2 years, until December 31, 2003. While most of the errors could have been corrected through simple recalculation,

the parties elected to litigate their disputes in this Court rather than resolving them voluntarily.

The Court conducted a one-day trial on December 18, 2006 in Washington, D.C. Thereafter, the parties filed post-trial briefs on February 2, 2002, and reply briefs on February 16 and 20, 2002.

For the reasons explained below, the Court concludes that Plaintiffs are entitled to some, but not all, of the relief they have requested. Plaintiffs may recover the unpaid remote worksite allowance for days that they actually worked at San Clemente Island. However, Plaintiffs may not include the remote worksite allowance in calculating their overtime pay. In the circumstances when the firefighters were sent home from San Clemente Island on the seventh day of their tour, the Court finds that Plaintiffs were on unpaid leave. Plaintiffs are not entitled to recover for this unworked day, nor are they to be charged any annual leave. Any other outcome could result in some firefighters owing annual leave to the Government. Plaintiffs are entitled to recalculation of their annual and sick leave at an accelerated rate based on a 168-hour tour of duty. The Court has made findings concerning Thrift Savings Plan contributions owed to Plaintiffs, but Plaintiffs must apply to the Office of Personnel Management ("OPM") to recover such amounts. Interest is allowable under the Back Pay Act, and Plaintiffs are entitled to liquidated damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., where Defendant knew and showed reckless disregard for its failure to adequately compensate Plaintiffs.

## Findings of Fact[1]

Plaintiffs are 24 current or former firefighters employed by the Navy. (Tr. 13; Stip. 1).[2] Plaintiffs work on San Clemente Island, located near the coast of southern California, 55 nautical miles south of Long Beach and 68 nautical miles west of San Diego. (Stip. 10).

---

[1] This statement of facts constitutes the Court's principal findings of fact under Rule 52(a) of the Rules of the Court of Federal Claims. Citations to the record are as follows: (1) November 22, 2006 Joint Stipulation of Material Fact (Stip. __); (2) December 18, 2006 Trial Transcript (Tr. __); (3) Plaintiff's Exhibits (PX __); and (4) Defendant's Exhibits (DX __).

[2] Plaintiffs are: Timothy T. Agee, Harlan G. Bennett, Ronnie Lane Chestnut, John F. Cunningham, James S. Galeta, Michael V. Henning, Robert G. Hill, Gregory T. Hudgens, Wayne A. Jebb, Gregory B. Keller, Richard LeClair, Laurence D. Long, Jamie Lopez, Raymond B. Matthews, Richard Orloff, Thomas A. Pistone, John W. Prey, Charles A. Ricks, John R. Schmidt, Stephen T. Stenberg, Christopher E. Swanner, Ramon E. Thomas, James R. Wilkinson, and Steven Schilling. Mr. LeClair is deceased.

The Government has designated San Clemente Island as a "Remote Worksite" under 5 U.S.C. § 5942(a) because it is distant from established communities or suitable places of residence. (Stip. 11). The firefighters are transported to and from San Clemente Island by air from North Island Naval Air Station in San Diego. (Tr. 42; Stip. 11). The flights are chartered by the Navy, and travel each day except weekends and holidays. (Tr. 42). The firefighters are transported on these flights free of charge. Id.

San Clemente Island is a military test facility where Navy SEALS and other Navy personnel are present. (Tr. 42). There are no towns or communities on the island. (Tr. 43). Plaintiffs perform typical fire fighting duties, responding to emergency fire and medical calls, and putting out wildfires. (Tr. 41). Plaintiffs are assigned to a fire station where they reside while on call. Id.

Prior to March 15, 1998, the firefighters worked nine days of each three-week period, known as a "6/8 and 3/4" work schedule. Under this schedule, the firefighters would work six days on, then have eight days off, followed by three days on and four days off. The cycle would then repeat. (Tr. 44; Stip. 5). The parties regarded this schedule as a 144-hour tour of duty per biweekly pay period, under which the firefighters were compensated for 24 hours each day they were on duty. Id.

Beginning March 15, 1998, the Navy changed the work schedule to seven days on and seven days off, known as a "7/7" schedule. Under this schedule, the firefighters worked a 168-hour tour of duty per biweekly pay period, again being paid for 24 hours each day they were on duty. (Tr. 43; Stip. 4, 6, 7). The Navy sometimes informed a firefighter on the morning of the seventh day that his services would not be needed that day. When that occurred, the firefighter's seven-day shift was cut to the six days he had already worked, and he left the island. (Tr. 49-50).

Like other federal employees, the firefighters receive benefits, such as paid sick and vacation leave, thrift savings contributions, and retirement benefits. The firefighters also receive a daily $10.00 remote worksite allowance to cover incidental costs while working on San Clemente Island. (Tr. 43). When the firefighters converted to the new "7/7" schedule on March 15, 1998, the Navy paid the firefighters for the extra 24 hours in each tour of duty, but continued to calculate benefits on the old 144-hour schedule, rather than the new 168-hour schedule. The firefighters also received the remote worksite allowance only for six days, even though they worked seven days. (Tr. 44).

The record is replete with correspondence documenting the firefighters' efforts to correct the improper calculation of benefits. On March 2, 1998, the Fire Chief of the Federal Fire Department, San Diego, informed the International Association of Firefighters that the

San Clemente Island work schedule would change from a 6/8 and 3/4 shift to a 7/7 shift, effective March 15, 1998. (PX 1; Tr. 53-54). This memorandum stated that "[t]his work schedule change will abolish 5 Firefighter positions," and that "[t]he manning of the Island will be 3 supervisory positions and 22 Lead/Driver/Firefighter positions." (PX 1). Shortly after the shift change went into effect, the firefighters began experiencing difficulties with their pay and benefits.

On August 24, 2000, more than two years after the work schedule change went into effect, the Commander, Navy Region Southwest, sent a memorandum to the Director, Office of the Deputy Assistant Secretary of the Navy, requesting that a new 168-hour work schedule be added to the Firefighters Pay Reform Act, 5 U.S.C. § 5545b (2000). (PX 5; Tr. 61-62). The memorandum stated that "[u]pon discussion with DFAS[3], Denver, if the work schedule is not identified in the Firefighters Pay Reform Act, they will not recognize it." (PX 5). This memorandum contained a list of all the San Clemente Island firefighters, along with their pay grade and step levels. Id. On September 26, 2000, the Commander in Chief of the U.S. Pacific Fleet, recommended approval of the new work schedule. (PX 6). Another memorandum followed on May 23, 2001 where the Commander, Navy Region Southwest, requested the Department of Defense Civilian Personnel Management Service, Arlington, Virginia, "to add a new 168-hour work schedule for firefighter payroll services." (PX 7). The letter further stated that "[w]e strongly endorse this request and ask that you give it your full consideration." Id.

On September 17, 2002, the San Diego branch of the Federal Firefighters Union filed a formal grievance with the Federal Fire Department San Diego. (PX 8). The Fire Department responded that "[w]e are currently working with DOD to obtain specific information on its status." (PX 9; Tr. 67-68). A San Diego Congressman also tried to assist the firefighters. Congressman Bob Filner, 50th District, California, stated in a letter to one of the firefighters that "I have contacted the Defense Finance Accounting Service, and requested that they *immediately look into your request.*" (PX 10, emphasis in original). On October 21, 2002, Congressman Filner reported to the firefighter that "[t]he DFAS claims that jurisdiction of this matter falls under the U.S. Navy," and that "[t]he DFAS has forwarded my inquiry to the Navy for a reply." (PX 13; Tr. 72-73). The Navy responded to Congressman Filner on December 10, 2002 that "because of the complexity of this issue, we are still working to obtain additional information to respond to your inquiry." (PX 14). On February 4, 2003, the Navy's Office of Civilian Human Resources, Washington, D.C., advised Congressman Filner that "action on this request" is being transferred to Mr. Steve Rumble, Chief, Field Advisory Services Division, Department of Defense Civilian Personnel Management Service, Arlington, Virginia. (PX 16).

---

[3] "DFAS" is the Defense Finance and Accounting Service.

On March 21, 2003, DOD's Civilian Personnel Management Service responded to Congressman Filner by stating that DFAS will "review the employees' pay records, verify the accuracy of previous payments, and determine how the work schedule change would affect these employees' pay." (PX 18; Tr. 76-77). Even at this time, now five years after the work schedule change took effect, Plaintiff Michael Henning testified that "we weren't getting any answers and nobody was telling us anything." (Tr. 79). Finally, on November 24, 2003, James A. Wachter, Chief, Field Advisory Services, approved the addition of a new 168-hour biweekly firefighter work schedule. (PX 21). Mr. Henning testified that "[b]asically, this is what we had been looking for since 1998." (Tr. 80). The Navy began the proper accumulation of leave and benefits under the 168-hour schedule in December 2003. The parties have not provided the exact effective date of this change, but the Court will presume for the benefit of Plaintiffs, and to simplify necessary calculations, that the effective date was December 31, 2003.

The parties agree that each plaintiff in this action is, or has been, an "employee" under the FLSA, 29 U.S.C. § 201 et seq. (Stip. 2). The parties also agree that Defendant is and has been a "public agency" and "employer" under the FLSA. (Stip. 3).

## Jurisdiction

Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidation or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, "does not create any substantive right[s] enforceable against the United States for money damages[;] . . . the Act merely confers jurisdiction upon it whenever the substantive right exists." United States v. Testan, 424 U.S. 392, 398 (1976) (citations omitted).

A plaintiff coming before this Court, therefore, also must identify a separate provision of law conferring a substantive right for money damages against the United States. See Todd v. United States, 386 F.3d 1091, 1094 (Fed. Cir. 2004). A statute or regulation is money mandating if it is "'reasonably amenable to the reading that it mandate a right to recovery in damages' and while such a reading is not to be 'lightly inferred,' a 'fair inference' that money damages are allowable under the statute or regulation in question will suffice." Fisher v. United States, 364 F.3d 1372, 1377 (Fed. Cir. 2004) (citing United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)).

Statutes that specify a salary to be paid to individuals for their personal services are considered money-mandating provisions and fall within this Court's jurisdiction. United

States v. Fausto, 484 U.S. 439, 453-54 (1988). Here, Plaintiffs invoke the FLSA, 29 U.S.C. §§ 201-219, the remote duty allowance provisions of 5 U.S.C. § 5942, and other Title 5 provisions to establish this Court's Tucker Act jurisdiction. Each of these statutes is money-mandating and provides substantive rights granting the Court authority to hear the related claims. Plaintiffs also claim money damages under the Back Pay Act, 5 U.S.C. § 5596, for compensation wrongfully withheld. While the Back Pay Act does not itself provide a statutory basis for jurisdiction, it does mandate the payment of money "when a plaintiff identifies an 'applicable law, rule, [or] regulation' which has been violated, leading to an reduction in pay." Carroll v. United States, 67 Fed. Cl. 82, 85 (2005); Worthington v. United States, 168 F.3d 24, 26 (Fed. Cir 1999); 5 U.S.C. § 5596(b)(1).

The Court is barred from adjudicating retirement benefit claims when the underlying dispute rests on personnel action subject to OPM administration, and Merit Systems Protection Board ("MSPB") review. See Lindahl v. Office of Personnel Management, 470 U.S. 768, 774-75 (1985) (holding that the Court of Federal Claims is not the appropriate authority to determine retirement issues, as that arena of federal employee litigation is within the exclusive jurisdiction of the MSPB and the Court of Appeals for the Federal Circuit); Bosco v. United States, 931 F.2d 879 (Fed. Cir. 1991); Salinas v. United States, 52 Fed. Cl. 399 (2002) (citing McClary v. United States, 775 F.2d 280, 282 (Fed. Cir. 1985)). The central question before the Court in this case is whether the Government is liable for miscalculating the firefighters' pay rate from March 15, 1998 until December 31, 2003. The Court therefore has authority to hear Plaintiffs' complaint, even though the miscalculation affects their retirement benefits. See Hannon v. United States, 48 Fed. Cl. 15, 24-25 (2000). The Court, nonetheless, leaves to OPM the specific remedy to fashion. Plaintiffs should request from OPM the adjustments they are entitled to in light of the Government's admissions and the findings of this opinion.

## Discussion

### A. The Remote Worksite Allowance Claims

#### 1. The Seventh Day Allowance

Defendant concedes that from March 15, 1998 until December 31, 2003, it failed to pay the firefighters the remote worksite allowance to which they were entitled under 5 U.S.C. § 5942 by paying the allowance for only six days even when Plaintiffs worked a seven-day tour. Deft.'s Post-Trial Brief at 1. Defendant also admits liability for the interest on the unpaid allowance under the Back Pay Act. Id. The Government, however, challenges Plaintiffs' claim to the allowance for those instances when a firefighter did not work on the seventh day but left San Clemente Island after the sixth day. Mr. Henning explained in his

trial testimony that firefighters routinely left the island a day early on those occasions when management determined that the firefighter detail was overstaffed. (Tr. 94).

The plain language of the enforcement regulation supports Defendant's position that the firefighters are only entitled to the allowance for the days on which they were on San Clemente Island. The regulation provides that "[w]hen the necessity for remaining at the post of duty for the workweek is the basis for the allowance . . . the allowance rate is paid for each full day, or prorated for each part of a day, that the employee remains at the duty post." 5 C.F.R. § 591.307(d); see generally Agwiak v. United States, 64 Fed. Cl. 203 (2005). Plaintiffs point out that the Government currently pays the firefighters the seventh day allowance even when they have been excused from working that day. Pltfs' Post-Trial Reply Brief at 2. This policy, however, is within the OPM's discretion. See 5 C.F.R. § 591.307(g) ("When a remote duty post is determined by the Office of Personnel Management . . . as being basically eligible for an allowance, the [OPM] will determine the basis for payment of the allowance rate taking into consideration the facts and circumstances associated with commuting to the remote duty post").

Accordingly, Plaintiffs are entitled to the remote worksite allowance for the days when they actually worked the seventh day of their tour at San Clemente Island, but not for days when they left San Clemente Island after the sixth day.

2. Inclusion of the Remote Worksite Allowance in Calculating Overtime Compensation

Plaintiffs contend that the remote worksite allowance should have been included in the firefighters' regular basic pay rate for calculating overtime pay and benefits. Pltfs' Brief at 3-4. They read selected Title 5 regulations and the FLSA, 29 U.S.C. §§ 201-219, as requiring the Government to include all remuneration in the rate used for overtime purposes. Id. The result Plaintiffs reach, however, contradicts the specific language of the Firefighter Pay Act, 5 U.S.C. § 5545b(d)(2), and the FLSA, which explicitly addresses firefighter overtime pay. 29 U.S.C. § 207(k). Read together, these provisions make clear that the overtime rate for firefighters does not include the remote worksite allowance.

Determining the correct firefighter overtime pay rate is a two-step process. First, the firefighters' "regular rate" of pay is determined by using a formula provided in the Firefighter Pay Act. See 5 U.S.C. § 5545b(b)(1)(A). The Act defines the regular rate as the annual rate of pay divided by 2,756. Id. Annual rates are provided in the General Schedule of rates applicable across the federal workforce and administered by the Office of Management and Budget. See 5 U.S.C. § 5332. The annual rate is "fixed under the rate

schedule applicable to the position held by the firefighter . . . before any deductions and exclusive of additional pay of any kind." 5 C.F.R. § 1302.

The FLSA provides the second step for calculating overtime pay for firefighters who work a tour of duty that deviates from the standard forty-hour workweek. It instructs the Government "in the case of . . . an employee to whom a work period of at least 7 but less than 29 days applies" to compensate the employee "at a rate not less than one and one-half times the *regular rate* at which he is employed." 29 U.S.C. § 207(k) (emphasis added). Plaintiffs' representations aside, the instructions in the FLSA and Title 5 regarding firefighter overtime pay dovetail seamlessly to set overtime pay at one and one-half times the regular rate, not including the remote worksite allowance. See 5 U.S.C. § 5545b(d)(2) (noting that the FLSA is not violated if the above method is used to calculate firefighter overtime pay) and 5 C.F.R. § 591.308 (providing that the remote worksite allowance "shall not be considered part of the employee's rate of basic pay in computing additional pay or allowances payable under other statutes").

Accordingly, the remote worksite allowance should not be included in the firefighters' regular rate of pay for calculating overtime pay and benefits.

B. Additional Compensation and Benefits

1. Seventh Day Pay

Similar to the worksite allowance claim, Plaintiffs seek compensation under the Back Pay Act for their entire 168-hour tour of duty even when they did not work the seventh day and were not charged annual or sick leave for that day. Pltfs' Brief at 4-7. They rely on Lanehart v. Horner, 818 F.2d 1574 (Fed. Cir. 1987) to assert that the firefighters were entitled to compensation "for all 168 hours of their tour of duty – even if . . . the day was not worked." See Pltfs' Brief at 7.

In Lanehart, the Federal Circuit reconciled Title 5's leave with pay statutes, and the FLSA's overtime provisions applicable to firefighters, 29 U.S.C. § 207(k). Under Title 5, an employee was entitled to an undiminished amount of pay for a pay period in which authorized leave was taken. See 5 U.S.C. §§ 6303-07. OPM, meanwhile, interpreted the FLSA as requiring a reduction in overtime pay if a firefighter took authorized leave with pay during any part of his work tour. Lanehart, 818 F.2d at 1576. The Federal Circuit found that because overtime pay was part of the firefighters' "customary and regular pay," the firefighters were still entitled to receive overtime pay even in pay periods in which they took approved leave. Id. at 1583.

Plaintiffs assert that their circumstances were substantially similar to the Lanehart firefighters. Both had an uncommon tour of duty, earned and used leave at an accelerated rate, and accrued leave when they worked their regularly scheduled overtime. See 5 USC § 5545b; 29 U.S.C. § 207(k)(1)(B); 5 C.F.R. § 630.210. Unlike the Lanehart firefighters, however, Plaintiffs were in an unpaid, excused absence status, not a leave status, when they did not work the seventh day. This distinction is critical. Lanehart and the Title 5 leave with pay provisions do not apply unless Plaintiffs were on annual leave, sick leave, or other paid time off status during the hours for which they now claim entitlement. See Armitage v. United States, 23 Cl. Ct. 483, 488 (1991) ("Lanehart and the leave with pay statutes do not apply unless the agencies actually treated plaintiffs as on annual or sick leave during the regularly scheduled overtime . . . to which they claim entitlement."). This Court may not now "declare that [they] were in annual leave or sick leave status, when they were not, so that the leave with pay statutes and the rationale of Lanehart apply." Armitage, 23 Cl. Ct. at 489. Plaintiffs, therefore, are not entitled to back pay for the seventh-day of their tour when they neither worked that day nor took annual or sick leave.

2. Annual and Sick Leave Accrual

The Government agrees with Plaintiffs that from March 15, 1998 until December 31, 2003, the firefighters were denied the annual leave and sick leave to which they were entitled because their accrual rates were based on a 144-hour tour of duty rather than a 168-hour tour of duty. Deft.'s Brief at 5. The parties also agree that because the firefighters worked an uncommon tour of duty, they were entitled to accrue annual and sick leave at an accelerated rate directly proportional to the standard leave accrual rates of an 80-hour biweekly tour of duty. See 5 U.S.C. § 6303(a); 5 C.F.R. § 630.210(a); see also Contreras v. United States, 215 F.3d 1267, 1271-73 (Fed. Cir. 2000). For annual leave, Plaintiffs with less than three years of service should have accrued annual leave at the following rates per pay period: 8.4 hours for less than three years of service; 12.6 hours for those with 3 years but less than fifteen years of service; and 16.8 hours for those with fifteen or more years of service. See 5 U.S.C. § 6303(a); 5 C.F.R. § 630.210(a). Sick leave accrual should have occurred at a rate directly proportional to the standard leave accrual rate of one-half day or four hours per pay period. The firefighters, therefore, should have received 8.4 hours of sick leave per pay period. Id.

Plaintiffs also are correct that the Government should have converted the firefighters' leave accrual rates when their tour of duty changed from 144 to 168 hours. See 5 C.F.R. § 630.210(b) ("When an employee is converted to a different tour of duty for leave purposes, his or her leave balances shall be converted to the proper number of hours based on the proportion of hours in the new tour of duty compared to the former tour of duty."); 5 C.F.R. § 630.401(e) ("If the number of hours in the employee's tour of duty is changed during the leave year, his or her entitlement to use sick leave . . . must be recalculated based on the new

tour of duty.") Further, no reduction in leave accrual should occur when the firefighter was on excused leave without pay on the seventh day of a tour. See 5 C.F.R. § 630.202(a) ("A full-time employee earns leave during each full biweekly pay period while in a pay status or in a combination of a pay status and nonpay status."); 5 C.F.R. § 630.208 (explaining that a reduction in leave credits is taken when the number of hours a full-time employee is in nonpay status equals the number of base pay hours in a pay period). See also Gullette v. U.S. Postal Service, 86 M.S.P.R. 380, 381 (2000) ("a full-time employee only earns leave when in a pay status or in a combination of pay status and non-pay status").

For those firefighters who remain in federal government service, accrued leave balances should be credited according to the rates above. If the amount of restored leave exceeds the maximum leave an employee may carry over from year to year, a separate leave account shall be created. See 5 U.S.C. § 6304. Firefighters who have departed from government service are entitled to a lump sum payment plus interest for the annual leave they were entitled to receive. See 5 U.S.C. §§ 5545b, 5548, 5553, and 6304. Sick leave does not have any cash value and employees who separate from federal service do not receive lump sum payouts for any unused sick leave. See 5 U.S.C. § 5551.

C. Retirement Benefits

Plaintiffs also are correct that from March 15, 1998 until December 31, 2003 the Government miscalculated the firefighters' basic pay rate and creditable service hours for retirement-related benefits. For federal employees, these benefits are determined pursuant to either the Civil Service Retirement System (CSRS), 5 U.S.C. §§ 8331-8351, or the Federal Employees' Retirement System (FERS), 5 U.S.C. §§ 8401-8479 (2000). Under both systems, the number of hours in a firefighter's tour of duty is a key factor in calculating benefits. First, annuities are based on "average pay," determined by "averaging an employee's . . . rates of basic pay in effect over any 3 consecutive years of creditable service[.]" See 5 U.S.C. §§ 8339, 8331(4) (CSRS); 5 U.S.C. §§ 8415, 8401(3) (FERS). Plaintiffs who may have relied on the pay rate they received from March 15, 1998 until December 31, 2003 to set their annuity pay were under-credited. Second, Plaintiffs were denied creditable hours of service for retirement eligibility when they failed to receive credit for a 168-hour rather than a 144-hour tour of duty.

During the same time frame, Plaintiffs also were denied the contributions to their Thrift Savings Plan ("TSP") to which they were entitled. The TSP is a tax-deferred retirement savings and investment fund for government employees. TSP contributions are based on the firefighter basic pay rate, which is the firefighter's basic hourly rate times the number of hours in the firefighter's regular tour of duty. 5 U.S.C. § 8331(3)(f) (CSRS); 5 U.S.C. § 8401(4) (FERS). For Plaintiffs under FERS, the mandatory contributions the

Government made to the firefighters were based on the 144-hour tour of duty rather than the 168-hour tour. (Firefighters under the CSRS are not entitled to a Government contribution under the TSP.) Further, basic pay is the basis for the cap placed on voluntarily contributions employees under both CSRS and FERS may make to their own TSP accounts. FERS-covered firefighters, therefore are entitled to receive make-up contributions from the Government, and firefighters under both retirement systems are entitled to voluntary make-up contributions pursuant to 5 C.F.R. § 1605.13(b).

As noted above, this Court is barred from adjudicating Plaintiffs' retirement related claims. Congress entrusted the OPM with administering the CSRS and FERS, and to adjudicate all claims arising under these retirement systems. 5 U.S.C. § 8347(a)-(b) (CSRS); 5 U.S.C. § 8461(b)-(c); 5 C.F.R. § 831.101(a) ("OPM has charge of the adjudication of all claims arising under [the retirement provisions] of title 5 . . . and of all maters directly or indirectly concerned with these adjudications."). Both CSRS and FERS create a detailed process for resolving claims relating to retirement benefits. See LeBlanc v. United States, 50 F.3d 1025, 1029 (Fed. Cir. 1995); Fornaro v. James, 416 F.3d 63 (D.C. Cir. 2005). Plaintiffs, therefore, should seek review and revision of their benefits with OPM, based on the Government's own admission of error and the findings in this opinion.

D. Federal Life Insurance Claims

With one exception, Plaintiffs lack standing to pursue claims under the Federal Employees Group Life Insurance ("FEGLI") program because this benefit does not have any cash value, and only converts to a monetary value following the death of the policyholder. See 5 U.S.C. § 8705. Plaintiff Richard LeClair's estate may be entitled to an adjustment in the benefit received, but only if the benefit was based on the miscalculated pay rate the Government applied to the firefighters between 1998 and 2003. FEGLI beneficiaries receive a basic insurance amount that is equal to the greater of (a) annual basic pay rounded up to the next $1000 plus $2,000, or (b) $10,000. 5 C.F.R. § 870.202. As with retirement benefits, FEGLI basic pay for firefighters is based on the number of regular and overtime hours in the 168-hour tour multiplied by the firefighter's hourly pay rate. See 5 U.S.C. § 5545b(b)(2).

## Conclusion

Based upon the foregoing, for the period March 15, 1998 until December 31, 2003, Plaintiffs are entitled to:

1. The remote worksite allowance for the days they were on San Clemente Island but did not receive the allowance. They are entitled to interest on these payments, pursuant to the Back Pay Act, 5 U.S.C. § 5596(b)(2). Plaintiffs are not entitled to the allowance for days they were not on the island, nor should the allowance be included in calculating their overtime pay.

2. Recalculation of their annual and sick leave at an accelerated rate based on a 168-hour tour of duty. Firefighters who have departed from government service are entitled to a lump sum payment plus Back Pay Act interest for the annual leave they were entitled to receive.

3. The Estate of Richard LeClair is entitled to an adjustment to the disbursed life insurance benefit if it was calculated using the pay rate the Government applied to the firefighters between 1998 and 2003.

Plaintiffs should request from OPM adjustments to their retirement benefits, including Thrift Savings Account contributions, as noted above.

The parties are directed to prepare a stipulation of the compensation due each Plaintiff in accordance with this Opinion (excluding Thrift Savings Plan contributions and other retirement benefits), and to submit the stipulation to the Court within 30 days, on or before June 22, 2007. This stipulation will serve as the basis for entry of judgment.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge