IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AGEE, TIMOTHY T., et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CASE NO: 04-1575C |
| | ) | Judge Wheeler |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| ________________________________ | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES, EXPENSES AND COSTS**

## I. INTRODUCTION

As a prevailing party, the plaintiffs are seeking reasonable attorneys' fees and costs in this matter under the Back Pay Act, and/or the Equal Access to Justice Act (EAJA). The fire fighters' claims arose from the Government's pay practices and the implementation of a 7-day, 168 hour tour of duty on March 15, 1998 while continuing to treat the fire fighters as if they worked a 6-day, 144 hour tour of duty. The firefighters worked a 168 hour tour of duty, yet the government calculated their pay, benefits and leave using only a 144 hour tour of duty, resulting in a denial of pay and benefits to the fire fighters. The Government was aware of the San Clemente Island fire fighters' concerns regarding their pay and other benefits when the 168 hour work schedule was implemented. The Government, through a combination of prolonged bureaucratic inertia, delay, and negligence, put off properly compensating the fire fighters under a 168 hour tour of duty for more than five years.

In making or reviewing attorney fee determinations under Backpay Act (5 USC § 5596) the following factors should be taken into consideration: fees must have been

incurred for services of attorney; fees may be sought only by prevailing party; award of fees must be warranted in interest of justice; and the amount claimed for attorney fees must be reasonable.

## II. BACKGROUND

The plaintiffs are current or former fire fighters employed by the defendant, United States Department of the Navy, on San Clemente Island (SCI). The Government designated San Clemente Island as a "Remote Worksite" under 5 U.S.C. § 5942(a) because it is distant from established communities or suitable places of residence. Prior to March 15, 1998, the firefighters worked nine days of each three-week period, known as a "6/8 and 3/4" work schedule. Under this schedule, the firefighters would work six days on, then have eight days off, followed by three days on and four days off. The cycle would then repeat. (Tr. 44; Stip. 5). The parties regarded this schedule as a 144-hour tour of duty per biweekly pay period, under which the firefighters were compensated for 24 hours each day they were on duty. Id.

Beginning March 15, 1998, the Navy changed the work schedule to seven days on and seven days off, known as a "7/7" schedule. Under this schedule, the firefighters worked a 168-hour tour of duty per biweekly pay period, again being paid for 24 hours each day they were on duty. (Tr. 43; Stip. 4, 6, 7). When the firefighters converted to the new "7/7" schedule on March 15, 1998, the Navy paid the firefighters for the extra 24 hours in each tour of duty, but continued to calculate benefits on the old 144-hour schedule, rather than the new 168-hour schedule. The firefighters also received the remote worksite allowance only for six days, even though they worked seven days. (Tr. 44). The record is replete with correspondence documenting the firefighters' efforts to

have the government correct the improper calculation of pay and benefits from 1998 until the December, 2003, when the Navy finally implemented and approved the 168-hour biweekly firefighter work schedule.

The Court found that plaintiffs are entitled to remote worksite allowance for the days that they actually worked on the seventh day of their tour of duty. The plaintiffs were awarded $25,883.93 for the unpaid remote work-site allowance and $12,300.72 for Back Pay Act interest for the unpaid remote work-site allowance. The Court also awarded plaintiffs additional annual and sick leave for the 168 hour tour of duty. This amounted to $68,316.73 for annual leave lump sums for firefighters who have separated from Federal service and $13,985.75 for Back Pay Act interest for annual leave lump sums for firefighters who have separated from Federal service. It also resulted in 4,399 hours of annual leave and 2,199 hours of sick leave to be credited to the plaintiffs who remain in federal service. Finally, the Court found that Federal Employment Group Life Insurance (FEGLI) distributions should have been recalculated based on the 168 hour tour of duty. This resulted in $60,598.88 in FEGLI damages. See Judgment, September 28, 2007. The Court made findings of fact regarding the retirement benefit claims, but found it did not have jurisdiction to order recalculations. The Court also found that the remote worksite allowance was not required to be included when calculating overtime, and also that although the fire fighters worked a 168 hour tour of duty, and the fire fighters were not entitled to compensation for that seventh day unless they actually worked that seventh day.

## III. ARGUMENT

### A. The Plaintiffs are Entitled to Reasonable Attorneys' Fees, Cost and Expenses Under the Backpay Act

The Back Pay Act provides, in pertinent part, that an employee who succeeds on a Back Pay Act claim may also be entitled to "reasonable attorneys' fees related to the personnel action.' See 5 U.S.C. 5596(b)(1)(A)(i). To qualify for reasonable attorneys' fees, the applicant bears the burden of proving that the award is "warranted in the interest of justice." See Abramson, et al. v. U.S., 45 Fed Cl. 149 (1999). See also Dunn v. Dep't of Veterans Affairs, 98 F. 3d. 1308, 1311 (Fed. Cir. 1996); Massa v. DOD, 833 F.2d 991, 992 (Fed. Cir. 1987).

The five-category test used to determine whether attorneys' fees should be awarded in the "interest of justice" to an employee who succeeds on a Back Pay Act, 5 U.S.C. § 5596, claim is well settled. A court should look to (1) whether the agency engaged in prohibited personnel practices; (2) whether the employee is substantially innocent of the charges and the agency action was clearly without merit or wholly unfounded; (3) whether the agency initiated the action in bad faith; (4) whether the agency committed a gross procedural error that prolonged the proceeding or severely prejudiced the employee; and (5) whether the agency knew or should have known that it would not prevail on the merits when it brought the proceeding. These categories represent only non-exhaustive directional markers helpful in defining "the interest of justice," not a methodological checklist. See Massa, 833 F.2d at 992 (citing Allen v. USPS, 2 M.S.P.B. 582, 592-93, 2 M.S.P.R. 420, 433-35 (1980)). See also, Naval Air Development Center, Dept. of Navy and AFGE, 21 FLRA No. 25 (1986)(stating that when making or reviewing attorney fee determinations under Backpay Act the following

factors should be taken into consideration: fees must have been incurred for services of attorney; fees may be sought only by prevailing party; award of fees must be warranted in interest of justice; amount claimed for attorney fees must be reasonable; and award of fees must be set out and fully articulated, reason decision.).

The threshold requirement for award of attorneys' fees is that plaintiffs have been affected by unjustified or unwarranted personal action that has resulted in withdrawal or reduction or pay, allowances, or differential and award of fees must be in conjunction with award of backpay on correction of unwarranted action. AFGE, Local 4015 & U.S. Department of the Army, Norfolk Naval Shipyard 52 FLRA No. 7 (1996); Murphy Veterans Admin. Hospital & AFGE 16 FLRA No. 140 (1984). Under the Back Pay Act, "pay, allowances, and differentials" includes "leave . . . and other monetary employment benefits to which an employee is entitled by statute or regulation and which are payable by the employing agency to an employee during periods of Federal employment." See 5 C.F.R. §550.803. Here, there is no dispute that the governments' failure to properly compensate plaintiffs' and accrue leave and other benefits according to their proper 168 hour tour of duty is an unjustified or unwarranted reduction of pay allowances or differential. Thus, the plaintiffs meet this first threshold.

As the plaintiffs suffered from an unjustified or unwarranted personal action resulting in significant damages, reasonable attorneys' fees and costs related to this action are warranted in the interest of justice. Here, there is no dispute that the plaintiffs are completely innocent in this matter. The Agency solely implemented the change in pay and tour of duty. The record is replete with correspondence and testimony detailing the firefighters' efforts to correct the improper calculation of pay and other benefits from

1998 until December, 2003, when the Navy finally implemented and approved the 168-hour biweekly firefighter work schedule. The Government, through a combination of prolonged bureaucratic inertia, delay, and negligence, put off properly compensating the fire fighters, and these actions are unwarranted.

Once a plaintiff has satisfied the "substantially innocent" requirement, the next line of inquiry is into the character of the Government conduct. The facts demonstrate that the Government acted in bad faith, committed a gross procedural error that prolonged the violation and that the Agency knew or should have known that it was in violation of Title V. See Massa, 833 F.2d at 992; Yorkshire v. MSPB, 746 F.2d 1454, 1456-57 (Fed. Cir. 1984) (determining that fees should be awarded because agency action was "wholly unfounded" and "clearly without merit"); Batchelder v. Department of Treasury, 12 M.S.P.B. 227, 228, 14 M.S.P.R. 37, 39 (1982) (finding agency negligent in its conduct if agency "knew or should have known" not to take action). The Government was well aware of the issues concerning the fire fighters' improper compensation of pay and other benefits when the fire fighters began working the 168 hour tour of duty. The firefighters' made numerous inquiries and took efforts to correct the improper calculation of pay and other benefits from 1998 until the December, 2003 which the Government was well aware. It is clear that the Government had a careless indifference or reckless disregard as to whether it was in compliance with Title V. Simply put, the Government was alerted to the violations in 1998, yet continued to violate Title V or failed to take steps to correct the infraction and come into compliance until December, 2003. The Agency's prolonged bureaucratic inertia, delay, and negligence, demonstrates the governments' bad faith in addressing and correcting this personnel issue.

The standard under the Back Pay Act authorizing an award of attorney fees is whether an award of attorney fees is in the interest of justice. The Back Pay Act is an express fee shifting statute to be strictly construed. Martin v United States (1987) 12 Cl Ct 223, affd in part and vacated in part 852 F2d 1292 (1988). See also Maney v Department of Health & Human Services, 637 F Supp 1128 (1986)(employee who received bonus and other pay adjustments eligible to recover attorney fees under 5 USC § 5596, because employee was "affected by unjustified or unwarranted personnel action" that did "result in withdrawal or reduction" of her compensation); Ward v Brown, 899 F Supp 123(WD NY 1995)(awarding attorney's fees pursuant to 5 USCS § 5596(b) for a federal employee whose discipline was reduced from discharge to suspension because fee award is warranted in interest of justice for time reasonably spent by employee's counsel in prosecuting action).

**B. The Plaintiffs are Entitled to Reasonable Attorneys' Fees, Costs and Expenses Under the Equal Access to Justice Act**

The plaintiffs are also entitled to reasonable fees, costs and other expenses under the Equal Access to Justice Act. See 28 USC § 2412**.** Fees and costs may be awarded to the prevailing party in any civil action brought by or against the United States. Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified or that special

circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A). The Government bears the burden of proving that its position was substantially justified. See Helfer v. West, 174 F.3d 1332, 1336 (Fed. Cir. 1999). It must show that its position throughout the dispute was "justified in substance or in the main”." Pierce v. Underwood, 487 U.S. 552, 565 (1988); see also Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991). A determination of what is in "the interest of justice . . . must . . . rely upon an impartial and rational sense of fairness constrained by practicality." Massa, 833 F.2d at 992. Such an inquiry encompasses both the agency's pre-litigation conduct and the agency's subsequent litigation position before the court. See Commissioner v. Jean, 496 U.S. 154 (1990).

A party seeking an award of fees and other expenses is required to submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

**C. The Plaintiffs are a Prevailing Party**

**1. The Plaintiffs are a Prevailing Party under the Back Pay Act**

While the Back Pay Act does not explicitly include a requirement that the party claiming attorney's fees be a prevailing party, courts have found that a party requesting fees under the Back Pay Act "may recover . . . if he shows that he was the prevailing party and that an award of fees would be in the interest of justice." Gavette v. Office of Personnel Management, 808 F.2d 1456, 1461 (Fed.Cir. 1986). It is possible that the Government will argue that the plaintiffs are not entitled to full reasonable attorneys’ fees

and expenses because the plaintiffs did not succeed on every one of its claims. In defining the meaning of prevailing party, however, the Federal Circuit Court explained "that a party need not have completely prevailed on every issue, but only have substantially prevailed or have prevailed on a significant portion of his claims." Sterner v. United States Army, 711 F.2d 1563, 1566 (Fed. Cir. 1983), see also Maney v. Department of Health & Human Services, 637 F. Supp. 1128 (Fed. Cir 1986).

**2. The Plaintiffs are a Prevailing Party Under the EAJA**

Under 28 USC § 2412(d)(1)(A), court must first determine if applicant is "prevailing party" by evaluating degree of success obtained. The party seeking EAJA fees bears burden of proving that it was prevailing party. Reich v Walter W. King Plumbing & Heating Contr, 98 F3d 147 (MD CA 1996). Statutory allowance of costs referred to in 28 USC § 2412(a) is not predicated on finding that government's position was not substantially justified, but instead, party in litigation with government is entitled to recover costs enumerated in 28 USC § 1920 as long as he qualifies as prevailing party, and prevailing party is one who succeeds on any significant issue and thereby achieves some benefit he sought in commencing litigation. Abernathy v Clarke 857 F2d 237 (Cir 1988).

Although Equal Access to Justice Act does not define term "prevailing party" plaintiffs may be considered prevailing parties for attorney fees purposes if they succeed on any significant issue in litigation which achieves some of benefit parties sought in bringing suit. Austin v DOC, 742 F2d 1417( 1984). A party can be deemed prevailing party under EAJA if it can demonstrate clear, causal relationship between litigation brought and practical outcome realized. For example, a plaintiff was a prevailing party

within meaning of EAJA where he was only successful on two of five challenges, resulting in court granting partial summary judgment to defendants. Lake Pilots Ass'n v United States Coast Guard 310 F Supp 2d 333 (DC 2004). To be considered "prevailing party" under 28 USC § 2412(d)(1)(A), plaintiff must have achieved judicially-sanctioned material alteration of legal relationship between parties McKay v Barnhart, 327 F Supp 2d 263 (SD NY 2004). A plaintiff who prevails in some but not all of claims against United States is a prevailing party. See Matthews v United States, 713 F2d 677(11th Cir. 1983); Naekel v DOT, FAA 884 F2d 1378 (1989)(where a Government employee who had sought reinstatement and back pay was prevailing party for purposes of award of attorney fees and expenses in accordance with 28 USC § 2412(d) where he had prevailed on 4 of 6 issues on appeal, since it is not necessary to succeed on every issue). Courts have found it possible to achieve more than partial or limited success even where applicant did not receive all of relief requested. Courts focus on significance of overall relief obtained by plaintiff in relation to hours reasonably expended on litigation and, in this regard, where plaintiff has achieved excellent results, his or her attorney should recover fully compensatory fee. Keeton Corr., Inc. v United States 62 Fed Cl 134 (2004). As addressed in the next section, the plaintiffs in this matter are a prevailing party, and should receive full attorneys' fees, expenses and costs in this matter.

**3. This Court's Award of Significant Backpay Damages and Other Benefits Resulted in the Plaintiffs Being a Prevailing Party**

It is hard to see how the plaintiffs would not be considered a prevailing party. In the present case, this Court found that plaintiffs were entitled to remote worksite allowance for the days that they actually worked on the seventh day of their tour of duty. The plaintiffs were awarded $25,883.93 for the unpaid remote work-site allowance and

$12,300.72 for Back Pay Act interest for the unpaid remote work-site allowance. This Court also awarded plaintiffs additional annual and sick leave for the 168 hour tour of duty. This amounted to $68,316.73 for annual leave lump sums for firefighters who have separated from Federal service and $13,985.75 for Back Pay Act interest for annual leave lump sums for firefighters who have separated from Federal service. It also resulted in 4,399 hours of annual leave and 2,199 hours of sick leave to be credited to the plaintiffs who remain in federal service. Finally, this Court found that Federal Employment Group Life Insurance (FEGLI) distributions should have been recalculated based on the 168 hour tour of duty. This resulted in $60,598.88 in FEGLI damages. See Judgment, September 28, 2007. The Court made findings of fact regarding the retirement benefit claims, but found it did not have jurisdiction to order recalculations. These findings alone demonstrate that the plaintiffs are a prevailing party.

The only claims not found in the plaintiffs' favor by this Court was that the remote worksite allowance was not required to be included when calculating the regular rate for overtime, and that although the fire fighters worked a 168 hour tour of duty, the fire fighters were not entitled to compensation for that seventh day unless they actually worked that seventh day. All of the plaintiffs' claims were based on the pay practices of the Government. The Back Pay Act claims were all significantly entwined in the Government's failure to compensate and pay benefits according to the proper 168 hour work period. While the Fair Labor Standards Act (FLSA) claim did not stem from the implementation of the 168 hour work period, it was addressed in the plaintiffs' general analysis of the Government's pay practices and damage calculations. Since the claims stemmed from the Agency's failure to properly compensate the fire fighters on the 168

hour tour of duty and the Agency's general pay practices, settlement efforts, time spent by the plaintiffs' attorneys preparing for the trial, deposing witnesses, and briefing would have been similar had the plaintiffs' unsuccessful claims not been included. Thus, the reasonable attorneys' fees and costs should not be reduced as the plaintiffs are the prevailing party, suffered an unwarranted personal action, and an award of full fees, expenses and costs would be in the interest of justice.

## D. THE PLAINTIFFS ARE SEEKING REASONABLE ATTORNEYS FEES, COSTS AND EXPENSES

The plaintiffs are seeking reasonable attorneys' fees, expenses and costs, inclusive of 8.6 hours expended in the preparation of this fee petition. Compensable expenses recoverable under 28 U.S.C. § 2412(d)(2)(A) are not confined to specific items listed in that provision, but instead, the Court has authority under § 2412(d)(2)(A) to award those reasonable and necessary expenses of attorney incurred or paid in preparation for trial of specific case before court, which expenses are those customarily charged to client where case is tried. Kelly v Bowen 862 F2d 1333 (8th Cir. 1988). Plaintiffs' counsel documents the amount of time spent working on this matter in the form of contemporaneously prepared time records, recorded on a tenth of an hour basis. An itemized statement of these fees, expenses and costs is attached. See Exhibit A.

### 1. The Plaintiffs Reliance on the Laffey Matrix Rate is a Reasonable Hourly Market Rate

Courts have consistently interpreted "reasonable attorney fees" as the prevailing market-rate fees. See Hensley v. Eckerhart, 461 U.S. 424 (1983). The Federal Circuit Court held that "reasonable attorney fees" in the Back Pay Act means "prevailing market-rate attorney fees." Raney v. Federal Bureau of Prisons, 222 F.3d 927 (Fed. Cir.

2000)(observing that Congress added the "reasonable attorney fees" provision to the Back Pay Act as part of the Civil Service Reform Act of 1978, and citing a variety of relevant fee shifting statutes passed in the years prior to this Act with the inclusion of reasonable attorney fees). An award of attorney fees for successful representation of employee adversely affected by agency action is properly based on prevailing market rate for legal services rendered. See Curran v Department of Treasury, 805 F2d 1406 (9th Cir. 1986).

The plaintiffs utilized the Laffey matrix to calculate the reasonable hourly market rate. See Exhibit B, and Laffey v. Northwest Airlines, Inc., 572 F.Supp. 354, 371 (D.D.C. 1983). The Laffey matrix is a guide to market rate attorney fees for the Baltimore / Washington area. The Laffey matrix has been cited as good evidence of the Market Rate for attorneys practicing in federal employment matters, and indeed can be found the Department of Justice website. See Exhibit B. The Laffey matrix rate is a reasonable market rate and should not be contested by the Government. Based on the Laffey matrix, the attorneys' fees are $134,343.50.

There has been an increased reliance on an "updated version of the Laffey matrix." See McDowell v. District of Columbia, Civ. A. No. 00-594 (RCL), LEXSEE 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001)(finding that plaintiffs may point to such evidence as an "updated version of the Laffey matrix or the U.S. Attorney's Office matrix, or their own survey" to demonstrate the prevailing market rates in the community). See Exhibit C. The Court in Salazar v. District of Columbia approved an updated version of the Laffey Matrix, which is provided as Exhibit C hereto. The Laffey Matrix is computed by multiplying a base hourly rate by an Adjustment Factor. The

updated Laffey matrix uses more accurate, recent base hourly rates and a more accurate Adjustment Factor. The updated Laffey matrix has been cited with approval. See, e.g., McDowell v. District of Columbia, 2001 U.S. Dist. LEXIS 8114 (D.D.C. June 4, 2001) citing Salazar v. District of Columbia, 123 F. Supp. 2d 8, 13 (D.D.C. 2000). Based on this updated Laffey Matrix, the plaintiffs' fees, expenses and costs would increase to $175,456.00. The plaintiffs are requesting that the Court determine whether the plaintiffs should utilize the updated or original Laffey matrix rate to determine the applicable market rate.

**2. The Plaintiffs are Entitled to Reasonable Expenses and Costs**

The plaintiffs are also seeking $10,163.36 in expenses and costs. Statutory allowance of costs referred to in 28 USC § 2412(a) is not predicated on finding that government's position was not substantially justified, but instead, party in litigation with government is entitled to recover costs enumerated in 28 USC § 1920 as long as he qualifies as prevailing party, and prevailing party is one who succeeds on any significant issue and thereby achieves some benefit he sought in commencing litigation. Abernathy v Clarke, 857 F2d 237(4th Cir 1988). Attorneys' fees and costs are recoverable under the Back Pay Act. See United States v. Fausto, 484 U.S. 439 (1988). The plaintiffs are a prevailing part, and entitled to such reasonable reimbursement by the Government.

**3. The Amount of Time Expended by Plaintiffs' Counsel was Reasonable**

In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983), the Supreme Court held that the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Id., at 433. The resulting computation is "strongly presumed to yield a reasonable fee."

Washington v. Philadelphia Co. Ct. of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996); City of Burlington v. Dague, 112 S.Ct. 2638, 2641(1992) (the lodestar amount is presumed to be a reasonable fee and should be modified only in exceptional cases); Hensley, 461 U.S. at 434. This is called the "lodestar amount. Id.

The Court in Hensley set forth a number of factors that should be considered in determining not only whether the fees are reasonable, but whether a multiplier should be applied to the lodestar amount. The plaintiffs are not seeking a multiplier. Accordingly, since plaintiffs should be found to be entitled to fees, under Hensley the lodestar amount should simply be examined to determine whether the hourly rates charged, the expenses charged and hours are reasonable under the fee recovery provisions of the Back Pay Act and EAJA.

The Union will briefly examine each of the Hensley factors to assist in understanding the work performed in this case, although we do not anticipate that the amount of time expended by plaintiff and rates requesting to be a heavily contested issue. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) time limitations imposed; (7) the amount involved and the results obtained; (8) the experience, reputation, and abilities of the attorneys; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. Since the Hensley decision, courts have relied on these standards when deciding fee issues.

Plaintiffs' counsel and law firm has extensive experience related to federal employment pay cases, as well as fire fighters and other public safety employees. This case

addressed a myriad of unique federal fire fighter pay issues, involved a great deal of raw data over a significant period of time. The complaint in this matter was filed on October 19, 2004. Since that time, this matter has been extensively litigated--several depositions have been conducted, settlement discussions have occurred, extensive backpay calculations have been performed by plaintiffs, damage explanation letters have been prepared, summary judgment briefs filed, in-court status conferences held, a one-day trial was conducted and post-trial briefs were submitted. These actions were all necessary in addressing the Title V violations suffered by the plaintiff fire fighters and to provide them their damages.

**4. The Plaintiffs Seek Fees For Time Spent Preparing This Fee Motion**

As a general rule, time expended on the fee issue s compensable in the fee award itself. Time spent establishing entitlement to and the amount of court-awarded attorneys' fees is often referred to as fees on fees. INS v. Jean, 496 U.S. 154, 165 (1990)(under EAJA); AFL-CIO v. FLRB, 994 F.2d 20, 22 (D.C. Cir. 1993)( under the Back Pay Act). The 8.6 hours spent preparing this motion is reasonable.

## IV. Conclusion

The plaintiffs are a prevailing party under the Back Pay Act and EAJA, and an award of full attorneys' fees, expenses and costs is in the interest of justice. Specifically, the plaintiffs are seeking $185,619.36 under the updated Laffey matrix rates, or in the alternative, $144,406.86 under the Laffey matrix.

Respectfully submitted,

Dated: April 4, 2008 s/David Ricksecker

David Ricksecker
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Attorney of Record

Thomas A. Woodley
Gregory K. McGillivary
WOODLEY & MCGILLIVARY
1125 15th Street, N.W.
Suite 400
Washington, D.C. 20005
(202) 833-8855 (Telephone)
(202) 452-1090 (Facsimile)

Of Counsel